575 S.E.2d 553

**Ann B. BOWEN, Respondent,**

v.

**Richard W. BOWEN, Petitioner.**

No. 25574.

Supreme Court of South Carolina.

Heard Dec. 5, 2002.
Decided Jan. 13, 2003.

 ⟳88

Morris D. Rosen and Donald B. Clark, of Rosen, Rosen & Hagood, LLC, of Charleston, for petitioner.

Peter L. Fuge and Jason P. Peavy, of Peter L. Fuge, P.A., of Beaufort, for respondent.

Justice MOORE:

We granted this writ of certiorari to determine whether the Court of Appeals properly held that the presumption of a resulting trust should not be applied to the acquisition of land where Husband and Wife had an antenuptial agreement. *Bowen v. Bowen,* 345 S.C. 243, 547 S.E.2d 877 (Ct.App.2001). We affirm.

## PROCEDURAL HISTORY

Previously, respondent (Wife) brought a divorce action against petitioner (Husband). The family court upheld Husband's and Wife's antenuptial agreement and held that four jointly titled properties acquired during the marriage were non-marital properties in which Wife had a one-half interest. The Court of Appeals vacated the portion of the family court order that addressed the parties' respective interests in the properties because the family court did not have jurisdiction over non-marital property. *Bowen v. Bowen,* 327 S.C. 561, 490 S.E.2d 271 (Ct.App.1997).

Wife then sought a declaratory judgment that she was the owner of an undivided one-half interest in the four properties. The matter was referred to the Beaufort County Master–in–Equity, who found for Wife. The Court of Appeals affirmed. We granted Husband's petition for a writ of certiorari.

## FACTS

Husband and Wife were married in May 1985, and were granted a divorce in 1994. Prior to their marriage, they entered into an antenuptial agreement in an attempt to pre-determine the financial consequences of any later separation, divorce, or death, and to preserve each party's separate property. The pertinent language from this agreement follows:

3. *All property* owned or income earned or accumulated by either of the parties at the time of their marriage or *which the parties may acquire,* earn or accumulate hereaf-

ter, or *during their marriage, from any source whatever shall be the separate property of the respective party* now owning, earning, accumulating or hereafter acquiring such property, free and clear of any rights, interest, claims or demands of the other ...

5. ... [E]ach party specifically waives any and all right of claim [sic] that such party may at any time have to take any share of the property of the other party *under any circumstances whatsoever, with the same force and effect as though single persons before any marriage.*

(Emphasis added).

During the marriage, four parcels of land were purchased and titled in both Husband's and Wife's names. Lot 270, Haig Point, and Lot 365, Haig Point, were conveyed by third parties to Husband and Wife "for and during their joint lives and upon the death of either of them, then to the survivor of them, his or her heirs or assigns." Townhouse Unit # 7, Gangplank Pointe, and Lot 336, Water's Edge, were conveyed by third parties to Husband and Wife "as tenants by the entirety, with the right of survivorship."

Wife did not make any financial contribution to the purchase of the properties, nor did she pay for any expenses in relation to the properties. However, Wife and Husband together borrowed part of the purchase price for Lot 365, Haig Point.[1] Wife and Husband also signed for a line of credit that was ultimately used for the down payment on the Townhouse property.

Wife testified Husband never informed her she was holding the properties in her name for him. She also testified that, while Husband had not explicitly so stated, she believed her interest in the properties were gifts from Husband.

Husband testified he never intended to make a gift of an undivided one-half interest in the properties to Wife, but instead had the properties jointly titled as an estate planning device. He did not recall telling Wife that he intended her to hold the properties for him and they were to be his sole property or that he did not intend to give her one-half interests in the properties.

---

1. However, Wife did not contribute to the loan payments.

The Master–in–Equity found Wife was entitled to a one-half interest in the net proceeds from the four disputed properties and that she owed one-half of all expenses incurred in keeping the properties, such as taxes, insurance, and maintenance of the funds to which the properties were converted.[2] The Master found Husband had made a gift to Wife of a one-half interest in the properties. The Master found the antenuptial agreement did not alter the result because "[n]othing in the antenuptial agreement prevent[ed] [Husband] from being more generous than he contracted to be."

The Court of Appeals held that because Husband and Wife had a clear understanding of their respective rights involving property acquired by each during the marriage, via the antenuptial agreement, it was unnecessary to employ the resulting trust or gift presumptions to determine those property rights. The Court of Appeals looked to the plain language of the agreement to give effect to the intentions of Husband and Wife and held that Wife had acquired a one-half interest in the four properties. *Bowen*, 345 S.C. at 250–251, 547 S.E.2d at 881.

As for Husband's contention that the Master erred by finding he intended to make a gift to Wife of an interest in the disputed properties, the court held that, while there was sufficient evidence in the record to sustain such a factual finding, it was unnecessary to address that issue. *Id.* at 251, 547 S.E.2d at 881.

### ISSUE

Whether the presumption of a resulting trust should be applied to the acquisition of land where Husband and Wife agreed in their antenuptial agreement to be treated as unmarried persons?

### DISCUSSION

Husband claims the court should have treated he and Wife as single persons, as their agreement required, and imposed a resulting trust on the properties in his favor.

---

**2.** All four properties have been sold.

 Equity devised the theory of resulting trust to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another. *Hayne Fed. Credit Union v. Bailey,* 327 S.C. 242, 248–249, 489 S.E.2d 472, 475 (1997) (citing *McDowell v. South Carolina Dep't of Social Servs.,* 296 S.C. 89, 370 S.E.2d 878 (Ct.App.1987)). The general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. *Id.* at 249, 489 S.E.2d at 475. The presumption, however may be rebutted and the actual intention shown by parol evidence. *Id.*

 But when the conveyance is taken to a spouse or child, or to any other person for whom the purchaser is under legal obligation to provide, no such presumption attaches. *Id.* On the contrary, the presumption in such a case is that the purchase was designated as a gift or advancement to the person to whom the conveyance is made. *Id.* at 249, 489 S.E.2d at 475–476 (citing *Lollis v. Lollis,* 291 S.C. 525, 354 S.E.2d 559 (1987)). This presumption, however, is one of fact and not of law and may be rebutted by parol evidence or circumstances showing a contrary intention. *Id.* at 249, 489 S.E.2d at 476 (citing *Legendre v. South Carolina Tax Comm'n,* 215 S.C. 514, 56 S.E.2d 336 (1949)).

 As the Court of Appeals properly noted, "in situations in which there is no clear understanding between the parties as to the ownership of conveyed property," the competing legal presumptions of a resulting trust and a gift between spouses generally arise. However, in this case, Husband and Wife entered into an antenuptial agreement which provides that Husband and Wife would be treated as if they were unmarried persons in relation to property and which expressly states that all property that the parties may acquire during the marriage from any source whatever shall be the separate property of the respective party. Because Husband and Wife had a clear understanding as to the ownership of conveyed property according to the antenuptial agreement, the presumptions are inapplicable.

■ The agreement restricted each spouse's right to acquire an ownership interest in the other's separate property, but it did not address a spouse's right to jointly title newly acquired property. Although Husband paid the entire purchase price for each of the properties, he chose to allow the properties to be jointly titled. If Husband had desired the four properties to be his separate property upon a divorce, pursuant to their antenuptial agreement, he should have had the properties conveyed and titled in his name alone. Under the terms of the agreement, the land, which was purchased with Husband's separate funds, would have remained his separate property had he not chosen to have the properties jointly titled. Treating the parties as "single persons before [the] marriage" as required under the antenuptial agreement, Wife acquired her interests in the properties by holding title with Husband.

## CONCLUSION

We find the Court of Appeals properly affirmed the Master's findings that Wife owned an undivided one-half interest in the four properties and that Wife owed one-half of all expenses in keeping the properties.

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.