THIS OPINION HAS NO PRECEDENTIAL
VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 Edward Bennett, Personal
 Representative of the Estate of Isaiah
 Bennett,        Appellant,
 
 
 

v.

 
 
 
 Clement J. Vanderhorst,       
 Respondent.
 
 
 

Appeal From Charleston County
Mikell R. Scarborough, Master-in-Equity

Unpublished Opinion No.
2005-UP-412
Heard May 11, 2005  Filed June 27, 2005

AFFIRMED

 
 
 
 Richard E. Fields, Barry I.
 Baker and Stephen P. Groves, Sr., all of Charleston,
 for Appellant.
 Douglas H. Westbrook, of Charleston
 and S. Thomas Worley, Jr., of Mt. Pleasant, for Respondent.
 
 
 

PER CURIAM:  Edward
Bennett, as personal representative of the Estate of Isaiah Bennett appeals the
trial courts ruling that the Estate was not entitled to property titled in
Clement J. Vanderhorsts name by way of a resulting trust or adverse
possession.  We affirm.
FACTS
In 1967, Isaiah Bennett and
his wife purchased the property located at 35 Race Street, Charleston, South
Carolina.  A year later, Isaiahs wife died.  Though Isaiahs wife
died intestate, leaving a portion of her ownership interest in the property to
Arthur Grant, her son from a prior relationship, Grant conveyed all his right,
title, and interest in the property to Isaiah. 
Isaiah deeded the property to his
nephew Reginald Johnson in June of 1975.  Reginald had lived with Isaiah
since his mother had passed away in 1971 when Reginald was 17 years old. 
While he was in college, Reginald considered the Race
Street property his home and returned to the property to live for a year after
his college graduation.  In 1976 Reginald moved to New
Jersey.  Reginald was unaware of the deed until after Isaiahs
death. 
Vanderhorst, another nephew of
Isaiah, moved into 35 Race Street
in the summer of 1976 and disputedly resided there until he married in 1984. The Race
Street house was where relatives visiting Charleston
would stay.  Several family members and Rosetta Simmons, who was declared
by the probate court to be Isaiahs common law wife, testified that they did
not recall Vanderhorst residing at the property.  However, Vanderhorst
claims he would stay with his mother in McClellanville when family
visited.  One of Isaiahs nephews testified that even Isaiah would not
stay at the house during holidays because it was full of visiting
relatives. 
A foreclosure action against the
property was brought in August of 1979.  Notice of foreclosure against
Reginald was served upon his roommate (sic), Clement Vanderhorst, a person of
sound discretion living at the residence, though Vanderhorst denied receiving
the documents.  Robin Jackson purchased the property at the foreclosure
sale.
Upon learning of the foreclosure
sale, Isaiah arranged for the repurchase of the property from Jackson
for $20,000.  The title to the property was placed in Vanderhorsts
name.  Vanderhorst attended the closing with Isaiah and executed a mortgage
and note for $21,500.  Vanderhorst also took out insurance on the property
and deducted the mortgage interest from his tax returns from 1979 until the
present.  In 1994, Vanderhorst, with Isaiahs knowledge, refinanced the
property, with the payout of $2,000 going into a joint bank account in
Vanderhorst and Isaiahs names.  Isaiah continued to make the mortgage
payments, repairs and improvements to the home and live on the property. 
Vanderhorst did not make any payments during Isaiahs life. 
Following Isaiahs death, Edward
Bennett, as personal representative for his brothers estate, brought an
action to obtain title from Vanderhorst under theories of accommodation and
adverse possession.  With approval of the trial court, the Estate later
amended its complaint to include a claim for a resulting trust. 
The trial court held that as
Vanderhorst was the natural object of Isaiah Bennetts bounty, the
inference was created that Isaiah intended a gift, and the Estate thus had the
burden of proving a gift was not Isaiahs intent.  The trial court
determined the Estate did not meet its burden, and Isaiah Bennett intended a
gift or advancement to his nephew Clement [Vanderhorst] of the property upon his
death.  Furthermore, the court held the evidence would rebut the
presumption of a resulting trust.  In addition, the trial court held the
Estates claim for adverse possession failed. 
The trial court denied the Estates
post-trial motions.  This appeal followed. 
STANDARD OF REVIEW
Whether an action is one at law or
in equity is determined by the nature of the pleadings and the character of the
relief sought.  In re Estate of Holden, 343 S.C. 267, 278, 539
S.E.2d 703, 709 (2000).  The appellate court will apply the appropriate
standard of review for a particular issue in a case that contains both legal and
equitable issues.  Eldridge v. City of Greenwood,
331 S.C. 398, 417, 503 S.E.2d 191, 200 (Ct. App. 1998). 
An action to determine a resulting
trust sounds in equity.  Jocoy v. Jocoy, 349 S.C. 441, 444, 562
S.E.2d 674, 675 (Ct. App. 2002).  As such, we may determine facts in
accordance with our view of the preponderance of the evidence.  Townes
Assocs., Ltd. v. City of Greenville,
266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).  While this standard permits a
broad scope of review, we do not disregard the findings of the trial court,
which saw and heard the witnesses and was in a better position to evaluate their
credibility.  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237,
391 S.E.2d 538, 543 (1990).
A claim for adverse possession is an
action at law.  Miller v. Leaird, 307 S.C. 56, 61, 413 S.E.2d 841,
843 (1992).  In an action at law, on appeal of a case tried without a
jury, the findings of fact of the judge will not be disturbed upon appeal unless
found to be without evidence which reasonably supports the judges findings. 
Townes Assocs., 266 S.C. at  86, 221 S.E.2d at 775.
LAW/ANALYSIS
Resulting Trust
The Estate claims the trial court
erred in finding Isaiah intended a gift of the property to Vanderhorst, rather
than creating a resulting trust.  We disagree. 
Equity devised the theory of
resulting trust to effectuate the intent of parties in certain situations when
one party pays for property, in whole or in part, that for a different reason is
titled in the name of another.  Bowen v. Bowen, 352 S.C. 494,
499, 575 S.E.2d 553, 556 (2003).  As a general rule, when real estate is
conveyed to one person and the consideration paid by another, it is presumed
that the party who pays the purchase money intended a benefit to himself, and
accordingly a resulting trust is raised in his behalf.  Id. 
However, the presumption may be rebutted and the actual intention shown by parol
evidence.  Id. 
In contrast, when the conveyance is
made to a spouse or child, or to any other person for whom the purchaser is
under legal obligation to provide, no such presumption arises.  Bowen,
352 S.C. at 499, 575 S.E.2d at 556.  In that case, the presumption is that
the purchase was designated as a gift or advancement to the person to whom the
conveyance is made.  Id. 
This presumption may also be rebutted by parol evidence or circumstances showing
a contrary intention.  Id.
We find that even if Vanderhorst was
not the natural object of his uncles bounty and the presumption of resulting
trust applies, Vanderhorst successfully rebutted this presumption. 
In Larisey v. Larisey, 93
S.C. 450, 77 S.E. 129 (1913), an uncle purchased property in the nephews
name, but he then took and held possession of the property, made improvements,
and paid all of the taxes.  At the time of the purchase, the uncle was a
bachelor and did not intend to marry.  The uncle expressed his intention
about giving the property to his nephew to a witness at the signing of the
deed.  He also reiterated the intended gift in a letter introduced at
trial.  The supreme court found the uncle intended a gift of the property
to his nephew, rebutting the presumption of a resulting trust.  Id.  at
452-53, 77 S.E. at 129-30. 
The facts in the present case are
similar to those in Larisey.  Like the uncle in Larisey, Isaiah was also
unmarried at the time he purchased the property in Vanderhorsts name. 
Isaiah had previously attempted to gift a favored nephew with the property by
deeding the property to Reginald.  At the time of the foreclosure and
reaquisition of the property in Vanderhorsts name, Vanderhorst had been
living with his uncle for three years while Reginald was living in New
Jersey.  Furthermore, like the uncle in Larisey, Isaiah also spoke of his
intent.  John Jones, former neighbor, specifically recalled Isaiah telling
him that upon Isaiahs death, the house would belong to Vanderhorst.  In
addition, Mildred Bennett, Isaiahs sister-in-law, testified Vanderhorst told
her that Isaiah told him that the house was going to him. 
Based on the evidence stated above,
we affirm the holding of the trial court that Isaiah intended a gift of the
property at 35 Race Street to his nephew Vanderhorst. 
Adverse Possession
The Estate argues the trial court
erred in failing to find Isaiah acquired the property by adverse
possession.  We disagree. 
Adverse possession may be
established under a ten-year statute of limitation.  See S.C. Code
Ann. § 15-3-340 (2005).  To constitute adverse possession, which results
in obtaining title to the disputed property, the possession must be continuous,
hostile, open, actual, notorious, and exclusive for the requisite period.  Getsinger
v. Midlands Orthopaedic Profit Sharing Plan, 327 S.C. 424, 430, 489 S.E.2d
223, 226 (Ct. App. 1997).  The claimants possession must be hostile to
not only the true owner, but also to the rest of the world so as to indicate his
exclusive ownership of the property.  Id.  The burden of proof
of establishing adverse possession is upon the party asserting such a
claim.  Id. at 428 489 S.E.2d at 225.  The party asserting a
claim of adverse possession must establish the claim by clear and convincing
evidence.  Id. at 429, 489 S.E.2d at 225. 
Isaiah did not exercise all the acts
of ownership over the property as if he were the sole owner.  Though Isaiah
paid for, maintained, and lived on the property until his death, he titled the
property in Vanderhorsts name.  He also informed Jones and Vanderhorst
of his intentions to gift the property to his nephew.  In addition, Isaiah
allowed Vanderhorst to seek the tax deductions for the mortgage interest on the
property and did not object when Vanderhorst refinanced the property. 
Finally, although evidence of Vanderhorsts improvements on the property is
minimal, he cut the grass, cleaned the house, and installed handicap handrails
in the shower.  Therefore, we find the Estate failed to provide clear and
convincing evidence that Isaiah acted in open, notorious, hostile, continuous,
and exclusive possession of the property. 
CONCLUSION
For the reasons stated herein, the
trial courts decision is
AFFIRMED.  
GOOLSBY, HUFF, and KITTREDGE, JJ.,
concur.