619 S.E.2d 12

**ENGLERT, INC., Respondent,**

v.

**LEAFGUARD USA, INC., Appellant.**

No. 4020.

Court of Appeals of South Carolina.

Submitted June 1, 2005.

Decided Aug. 8, 2005.

Rehearing Denied Sept. 20, 2005.

Todd M. Musheff and Wendy J. Keefer, both of Charleston, for Appellant.

Michael Mark McAdams, of Myrtle Beach, for Respondent.

WILLIAMS, J.:

LeafGuard USA, Inc. appeals a partial grant of summary judgment in favor of Englert, Inc. concerning the possession of a gutter-fabricating machine. We affirm.[1]

## FACTS / PROCEDURAL HISTORY

In 1993, Jerry Dan Vickory entered into a sub-license contract with Englert, Inc. on behalf of his company, Seamless Gutters of Socastee, Inc. ("Seamless Gutters"). Seamless Gutters was in the business of manufacturing and installing

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

roof gutters. The agreement granted Seamless Gutters the right to manufacture, sell, and install Englert's product, the LeafGuard Gutter System (a patented gutter system which protects against blockage caused by leaves and debris), in a pre-determined sales territory. The agreement also called for the purchase of a gutter-fabricating machine ("the Machine") to produce the Englert gutters. Seamless Gutters was required to pay a $5,000 deposit on the Machine and pay the remaining $21,000 balance upon its delivery. The contract also included the following buy-back provision:

> Upon termination of this Agreement, Englert shall purchase, and Sub–Licensee shall sell, the Englert Leaf-Guard Gutter Machine, subject to normal wear and tear and pay Sub–Licensee at a price equal to the greater of:

> (i) the depreciated value of the Englert LeafGuard Gutter Machine, based on a depreciated rate of 20% per year on the original price; or

> (ii) $1.00

Upon the Machine's delivery, Seamless Gutters paid the full purchase price and began to manufacture, sell, and install the Englert Gutter System in its contractual sales territory.

In 1994, Vickory incorporated a second company, LeafGuard USA, Inc.,[2] which engaged in the same business as Seamless Gutters in the same sales territory. The incorporation of the new business essentially constituted the mere renaming of Seamless Gutters; however, Seamless Gutters remained an incorporated entity. Pursuant to Seamless Gutter's 1993 contract with Englert, Leafguard USA utilized the Machine for the manufacturing and sale of the Englert LeafGuard Gutter System.

In 1999, Vickory renewed the 1993 contract with Englert, this time acting on behalf of the more recently created Leaf-Guard USA, Inc. The 1999 contract is essentially identical to the 1993 contract, granting LeafGuard USA the right to sell Englert's product in the territory defined by the 1993 agreement. The 1999 contract also contains identical language regarding the purchase of an Englert gutter-fabricating ma-

---

**2.** The 1993 contract granted Seamless Gutters the right to use Englert's trademarks, namely the "LeafGuard" brand name, in association with the sale of its gutter system.

chine. However, because LeafGuard USA already possessed the Machine purchased under the 1993 contract, no gutter-fabricating machine was actually purchased under the 1999 contract.

The 1999 contract, similar to that of 1993 (as later amended), set a "sales target" of 15,000 lineal feet of product per year. LeafGuard USA agreed to pay Englert royalties on at least 15,000 feet per year, regardless of whether they met the quota. The contract contained the following language regarding termination:

> The term of this Agreement shall initially be for a two-year period from January 1, 1999 through December 31, 2000 . . . and shall, if Licensee has materially complied with all of the provisions of this License, continue in full force and effect for additional one year periods thereafter, unless either party, upon 30 days written notice to the other party . . . elects to terminate this Agreement.
>
> . . . .
>
> Should Sub–Licensee be in default on its payment obligations to Englert for 60 days, Englert may, at its option, terminate this license immediately and/or seek any other options open to Englert, including taking over or repossessing Sub–Licensee's Englert LeafGuard Gutter Machine. . . .

According to Englert, the total footage of product ordered by LeafGuard USA in 2000 was 3,940 feet, which was 11,060 feet short of LeafGuard USA's contractual sales target and obligatory royalty payments. Englert claims no royalties were paid on the 2000 shortfall. On March 15, 2001, Englert faxed Vickory a letter notifying LeafGuard USA that Englert was terminating its sub-licensing agreement pursuant to the contractual language quoted above. Englert sought to exercise its contractual buy-back option regarding the Machine, which, after over six years of possession, was valued at $1.00 according to the depreciation schedule agreed upon in both the 1993 and 1999 contracts.[3] LeafGuard USA refused to return the Machine and, in July 2001, Englert commenced the present action seeking its immediate possession and monetary damages.

---

3. LeafGuard USA believes the Machine's current value to be approximately $10,000, but offers no evidence supporting this assertion.

On June 17, 2002, the circuit court denied a preliminary motion by Englert for possession of the Machine, ruling that LeafGuard USA was entitled to its possession until a decision on the merits. In March 2003, Englert filed an amended complaint, which added an additional cause of action. Leaf-Guard USA answered the amended complaint, asserting several affirmative defenses as well as counterclaims for violations of South Carolina's Unfair Trade Practices Act, breach of contract, and fraud, *inter alia.* Englert then filed motions for 1) summary judgment on the issue of the Machine's possession, 2) dismissal of LeafGuard USA's counterclaims, and 3) temporary injunctive relief. After consideration of submitted materials from both parties, the circuit court refused to dismiss LeafGuard USA's counterclaims and denied Englert's requested injunctive relief. Englert's motion for partial summary judgment, however, was granted. The circuit court found no issue of fact as to the contract's termination and that the contract's unambiguous terms allowed Englert to repurchase the Machine upon termination of the parties' relationship. Accordingly, it ordered LeafGuard USA to sell the Machine to Englert for the agreed upon price of $1.00. Leaf-Guard USA's subsequent motion for reconsideration was denied. This appeal followed.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

## LAW / ANALYSIS

LeafGuard USA bases its argument on appeal on the spurious corporate formality that it was Seamless Gutters who initially purchased the Machine and not LeafGuard USA. It

contends that LeafGuard USA owns no gutter-fabricating machine; thus, the relief granted to Englert was erroneous because Seamless Gutters is not a named party in the present lawsuit. We are not persuaded by this argument.

We begin with restating the basic fact of this case that Vickory incorporated LeafGuard as a direct result of Seamless Gutters 1993 contract with Englert. The corporate name itself makes use of the Englert brand name "LeafGuard" and, from the corporation's inception until 1999, it functioned wholly under the rights granted it from the 1993 agreement between Seamless Gutters and Englert. Adoption of the position that Seamless Gutters and LeafGuard USA are completely distinguishable entities, alike "only in ownership," not only ignores the readily apparent facts of this case, but also exposes LeafGuard USA, when viewed as a separate entity, to possible liability for over five years of trademark and patent infringement. If LeafGuard USA was conveyed no possessory right in the Machine by the 1993 contract, neither was it conveyed the right to manufacture, sell, and install the Englert LeafGuard gutter system or to make use of the Englert brand names and trademarks, which the company most certainly did from 1994 to 1999.

Despite Vickory's vague assertions to the contrary,[4] the fact that LeafGuard USA currently possesses the Machine and that it and Seamless Gutters are essentially the same entity is acknowledged throughout the record. For example, in its answer to Englert's amended complaint, LeafGuard USA stated, "the value of the gutter machine rightfully *owned and possessed by [LeafGuard USA]* exceeds Ten Thousand and 00/100 (10,000.00) Dollars." (emphasis added). Similarly, although Seamless Gutters was the listed party to the 1993 contract, LeafGuard USA states in its appellate brief that the 1999 contract "served to continue the territory of the franchise sold under the 1993 agreement." In his 2003 deposition, Vickory testified he had been the vice president and owner of LeafGuard USA for approximately twenty years, even though prior to 1994 the business only existed as Seamless Gutters. LeafGuard USA's arguments on appeal and below, which

---

4. Vickory stated that, although both companies install gutters, "[o]ne is LeafGuard and one is not a LeafGuard."

assert simultaneously that LeafGuard USA owns no gutter-fabricating machine, yet the act of repossessing its gutter-fabricating machine would destroy the business, also reflect this inconsistency.

In 1992, this court, faced with very similar arguments heavily relying on corporate technicalities, held as follows:

A corporation may be known by several names in the transaction of its business. If it is sued in a name under which it transacts business, the process will ordinarily be sufficient to bring it before the court. The misnomer of a corporation has the same effect as the misnomer of an individual. If it later appears that the true name of the corporation is different from the name under which it was sued, the misnomer is properly a subject of amendment. However, failure to correct the corporate name does not invalidate the process or the judgment where the misnomer causes the corporation no prejudice.

*Griffin v. Capital Cash,* 310 S.C. 288, 292, 423 S.E.2d 143, 146 (Ct.App.1992) (internal citations omitted). Accompanying this statement of law, the court included the following chiding remarks, which we believe worth repeating here:

A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

*Id.*

In the present case, the parties to both the 1993 and 1999 contracts were the same, save for Vickory's use of a different corporate name. The record clearly reflects that the parties were aware that LeafGuard USA was using the same gutter-fabricating machine sold to Seamless Gutters in 1993 and that they considered the 1998 agreement a continuation of the prior contract. We find no prejudice to the appealing company, whether called Seamless Gutters or LeafGuard USA, in Englert's failure to employ all of its corporate designations in the present lawsuit. LeafGuard USA, who is admittedly in

possession of the Machine, is therefore required, under the unambiguous terms of the 1993 and 1999 contracts and regardless of the future success of its counterclaims, to sell the Machine to Englert for the agreed upon price.[5]

For the foregoing reasons, the circuit court's grant of partial summary judgment is

**AFFIRMED.**

ANDERSON and STILWELL, JJ., concur.

---

**5.** Because the trial court granted summary judgment only as to the repurchase of the Machine, the other issues LeafGuard USA argues on appeal have yet to be ruled upon by the trial court; thus, we do not address them here. *See Lucas v. Rawl Family Ltd. P'ship,* 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004) ("[A]n appellate court cannot address an issue unless it was raised to and ruled upon by the trial court.").