659 S.E.2d 496

**ENGLERT, INC., Respondent,**

v.

**LEAFGUARD USA, INC., Petitioner.**

No. 26460.

Supreme Court of South Carolina.

Heard Feb. 5, 2008.

Decided March 24, 2008.

---

130

John W. Fletcher, of Barnwell Whaley Patterson & Helms, of Charleston, for Petitioner.

Mark McAdams, and Amanda A. Bailey, of McNair Law Firm PA, of Myrtle Beach, for Respondent.

Justice WALLER:

We granted certiorari to review the Court of Appeals' opinion in *Englert, Inc. v. LeafGuard USA, Inc.*, 365 S.C. 565, 619 S.E.2d 12 (Ct.App.2005). The Court of Appeals affirmed the partial grant of summary judgment to Respondent, Englert, Inc., finding Englert was entitled to possession of a gutter-fabricating machine which was in the possession of Petitioner, LeafGuard USA, Inc. We reverse the grant of summary judgment.

## FACTS

Jerry Dan Vickory is the owner of two companies which manufacture and install gutters: LeafGuard USA and Seamless Gutters of Socastee. In 1993, Vickory, on behalf of Seamless Gutters, entered into a Sub–License Agreement with Englert, Inc., a distributor of seamless gutter machines and raw materials used in manufacturing seamless gutters. Pursuant to the agreement, Seamless Gutters was .granted the right to manufacture, sell, and install Englert's product, the LeafGuard Gutter System, in a set sales territory. The agreement set forth minimum sales quotas and required Seamless Gutters to pay Englert royalties. The agreement required Seamless Gutters to purchase a $26,000 gutter-fabricating machine to produce the Englert Gutter System. The contract includes the following buy-back provision:

Upon termination of this Agreement, Englert shall purchase, and Sub–Licensee shall sell, the Englert LeafGuard Gutter Machine, subject to normal wear and tear and pay Sub–Licensee at a price equal to the greater of:

(i) the depreciated value of the Englert LeafGuard Gutter Machine, based on a depreciated rate of 20% per year on the original price; or

(ii) $1.00

In 1998, LeafGuard USA entered into a SubLicense Agreement with Englert which was substantially similar to the 1993

agreement between Englert and Seamless Gutters. As with the prior agreement, LeafGuard USA had minimum sales quotas (15,000 feet of gutters per year), and was required to pay royalties. Although the 1998 contract required LeafGuard USA to purchase an Englert LeafGuard Gutter Machine for $28,000.00, it is undisputed that LeafGuard USA simply took possession of and utilized the LeafGuard Gutter Machine purchased by Seamless Gutters in 1993.

The 1998 agreement contains the same buy-back provision, allowing Englert to repurchase the LeafGuard Gutter Machine for $1.00 after full depreciation. The 1998 agreement was for an initial two year term from Jan. 1, 1999–Dec. 31, 2000 and provided that it would continue for additional one year periods thereafter, "if Licensee has materially complied with all of the provisions of this License." However, the agreement provided that if the licensee breached any provision or remained in default for a period of thirty days after written notice from Englert (or 10 days written notice in the event of failure to pay royalties), Englert had the right to cancel the agreement and terminate the license immediately.

On March 15, 2001, Englert sent LeafGuard USA a letter advising that after numerous attempts at trying to contact LeafGuard USA, it was terminating the Sub–Licensing Agreement for the following reasons:

—Failure to meet the established sales target amount agreed as stated in the Sub–License Agreement under section 5C.

—As stated in the Sub–License Agreement under Section 6E, should Sub–Licensee be in default on its payment obligations to Englert for 60 days, Englert may, at its option, terminate this License Agreement and/or seek any other options open to Englert, taking over the repossessing SubLicensee's Englert LeafGuard Gutter Machine and/or rescinding Sub–Licensee from further manufacturing and distributing of Englert LeafGuard, and initiating the collection of the amounts owed to Englert.

The letter went on to advise that LeafGuard USA was 11,060 feet short of its 2000 sales quota, and that it was over 60 days past due in payment of royalties. Thereafter, Englert advised LeafGuard USA that it was to terminate all use of Englert's

trademarks, and was to make arrangements for the immediate return of the gutter machine, at its expense, for which it would be paid $1.00 for the machine, in accordance with the licensing agreement.

LeafGuard USA did not return the machine and on July 30, 2001, Englert filed a Claim and Delivery action. One year later, on June 17, 2002, Judge Breeden denied Englert's motion for immediate possession of the gutter machine. Englert filed an amended complaint in March 2003 seeking an injunction and other relief. LeafGuard USA answered and alleged the affirmative defenses of waiver, estoppel, laches, unclean hands, fraud and bad faith (among other defenses). LeafGuard USA also filed a counterclaim, alleging unfair and deceptive trade practices, breach of contract, breach of contract accompanied by a fraudulent act, and fraud.

After a hearing, Judge Harwell granted Englert's motion for partial summary judgment, essentially holding that since the parties' contract was terminated, Englert had an absolute right to repossess the machine. Judge Harwell also found that LeafGuard USA's counterclaims did not preclude summary judgment. The Court of Appeals affirmed. *Englert, Inc. v. LeafGuard USA, Inc.,* 365 S.C. 565, 619 S.E.2d 12 (Ct.App.2005). The Court of Appeals addressed only Leaf-Guard USA's primary issue, in which it asserted summary judgment could not be granted to Englert because the machine had actually been sold to Seamless Gutters, such that the court could not order a transfer of ownership from a non-party. The Court of Appeals ruled that the two companies were in reality the same company, such that the grant of summary judgment was proper. The Court of Appeals did not address whether LeafGuard USA's counterclaims and affirmative defenses were sufficient to raise a genuine issue of material fact.

## ISSUE

Did the trial court err in granting summary judgment where LeafGuard USA's defenses and counterclaims had not been ruled on?

## STANDARD OF REVIEW

When reviewing a grant of summary judgment, the appellate court applies the same standard applied by the trial

court pursuant to Rule 56(c), SCRCP. *Hansson v. Scalise Builders of South Carolina,* 374 S.C. 352, 650 S.E.2d 68 (2007); *David v. McLeod Reg'l Med. Ctr.,* 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *David,* 367 S.C. at 247, 626 S.E.2d at 3. Moreover, since it is a drastic remedy, summary judgment should be cautiously invoked so that a litigant will not be improperly deprived of a trial on disputed factual issues. *Conner v. City of Forest Acres,* 348 S.C. 454, 560 S.E.2d 606 (2002). "The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder." *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Baugus v. Wessinger,* 303 S.C. 412, 401 S.E.2d 169 (1991).

## DISCUSSION

■ LeafGuard USA contends there are genuine issues of material fact as to whether the contract was properly terminated by Englert, thereby precluding the entry of summary judgment. We agree.

LeafGuard USA submitted the affidavit of its owner, Jerry Vickory, in opposition to Englert's motion for summary judgment.[1] In the affidavit, Vickory contends Englert was upset with LeafGuard USA for having developed its own website to market LeafGuard products, and that for complaining about Englert infringing on its LeafGuard USA trademark. Vickory's affidavit asserts that Englert representatives told him,

---

1. Englert asserts the affidavit was untimely, as it was not filed until after the hearing on the motion for summary judgment. However, it is undisputed that the affidavit was filed prior to the trial court's ruling, and there being no indication in the record that the trial court did not consider the affidavit, we must assume it was considered. *Cf. Smith v.*

and his wife, that they would "get us and take away our franchise." Vickory also contends that prior to Englert's discovery of the website, he had heard nothing about failing to meet sales quotas or unpaid royalties and had, in fact, been recently commended on his sales.[2] Vickory asserted that throughout his course of dealing with Englert, if there was ever any issue as to minimum footage in a given year, Leaf-Guard USA was permitted to purchase extra rolls to make up the difference.

We find the information contained in Vickory's affidavit, along with its counterclaims, and affirmative defenses, are sufficient to create genuine issues of material fact as to whether or not Englert properly terminated the contract. Accordingly, under the facts presented, we find the trial court erred in granting summary judgment in favor of Englert. The Court of Appeals' opinion affirming the grant of summary judgment is

**REVERSED.**

TOAL, C.J., MOORE, PLEICONES, JJ., and Acting Justice J. MICHELLE CHILDS, concur.

---

*Hastie,* 367 S.C. 410, 626 S.E.2d 13 (Ct.App.2005) (recognizing that it is within a trial judge's discretion to accept late affidavits in opposition to a motion for summary judgment).

**2.** In fact, a letter dated Dec. 15, 2000, from Englert to LeafGuard USA states "Good job. Keep selling."