# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Sylvia Lockaby, Appellant,

v.

City of Simpsonville, Janice Curtis, and Adam Randolph,
Respondents.

Appellate Case No. 2019-001449

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

Opinion No. 5993
Heard September 13, 2022 – Filed June 21, 2023

**AFFIRMED**

Andrew Sims Radeker and Taylor Meriwether Smith, IV,
both of Harrison, Radeker & Smith, P.A., of Columbia,
for Appellant.

Boyd Benjamin Nicholson, Jr. and Sarah P. Spruill, both
of Haynsworth Sinkler Boyd, PA, of Greenville; and
Daniel Roper Hughes, of Duggan & Hughes, LLC, of
Greer, all for Respondents.

**GEATHERS, J.:**    In this civil rights action, former Simpsonville City Councilmember Sylvia Lockaby (Lockaby) challenges a grant of summary judgment to the City of Simpsonville (the City), former Mayor Janice Curtis (Curtis), and Sgt. Adam Randolph (Sgt. Randolph) (collectively, Respondents).  Lockaby alleges the circuit court erred in (1) finding that she should have pursued "internal remedies" before bringing suit; (2) concluding that her claims were barred by legislative immunity; and (3) finding there were no genuine issues of material fact.  We affirm.

## FACTS/PROCEDURAL HISTORY

On February 9, 2016, the Simpsonville City Council began its regular business meeting.  After the call to order, pledge of allegiance, and a few other agenda items, the conversation eventually turned to the matter of a proposed curb replacement in the town.  During discussion of the topic, Lockaby began asking the city administrator questions.  What happened next is revealed in a transcript provided in the meeting minutes.  We quote at length because of the centrality of the events to the issues before us:

> Councilmember Lockaby: Are we opening a can of worms?  Cause if we fix this . . .
>
> Mayor Curtis: Who are you talking to?
>
> Councilmember Lockaby: I'm looking at Mr. [Dyrhaug].[1]
>
> Mayor Curtis: Well you didn't identify anyone . . . excuse me.
>
> Councilmember Lockaby: Mr. [Dyrhaug], I'm looking straight at you.  Are we opening a can of worms when we do this? I'm just asking the question.
>
> Mr. Dyrhaug: I don't have an answer for that, but I . . .
>
> Councilmember Lockaby: Well.

---

[1] The city administrator's name is rendered two different ways in the minutes.  We are not certain which is correct but have chosen the one used to designate him while he was speaking.

Mr. Dyrhaug: The issue is that[,] so when this road was resurfaced[,] that the reveal on the curb was diminished and that's caused an issue of storm water coming from the road onto private properties.

Councilmember Lockaby: And we have storm water issues all over the city.

Mayor Curtis: [Not intelligible]

Councilmember Lockaby: I'm still speaking, please.

Mayor Curtis: Yes, but you're arguing the point and this isn't a time for argument. You can ask questions, but this isn't argument.

Councilmember Lockaby: I'm not arguing. I'm, I'm stating a fact that we have storm water issues all over the city. Is this opening a can of worms?

Mayor Curtis: Well, ask our attorney.

Councilmember Lockaby: I was asking Mr. [Dyrhaug;] I haven't even gotten to the attorney yet.

Mayor Curtis: Well, okay, that's fine. Mr. Holmes,[2] could you . . .

Councilmember Lockaby: I'm not finished.

Mayor Curtis: You are now. [Gavels] Thank you. Mr. Holmes . . .

Councilmember Lockaby: I am not.

Mayor Curtis: Yes, you are. Mr. Holmes, could you . . .

_____

[2] This appears to be a reference to the city attorney.

Councilmember Lockaby: [talks over, not intelligible] . . . we had to do . . .

Mayor Curtis: [Gavels 3 times] Order.  Order.  Order.

Councilmember Lockaby: You going to throw me out?[3]

Mayor Curtis: [Gavels] Order.

Councilmember Lockaby: You going to threaten to throw me out?

Mayor Curtis: Keep it up and you'll find out.

Councilmember Lockaby: I guess I will.

Mayor Curtis: Okay.

Councilmember Lockaby: I'm keeping it up.

Mayor Curtis: [Gavels] Mr. Holmes[,] will you please answer her question?  Thank you.

Councilmember Lockaby: I know if you want to answer her question[;] I haven't asked one.

Mayor Curtis: Can I get the police officer from the back to enter the front, please?

Officer: Need her out?

Mayor Curtis: I need her out.

Officer: Councilmember Lockaby, will you come with me, please?

---

[3] Apparently, Mayor Curtis had threatened to throw out another member of the council earlier in the meeting.  Mayor Curtis had taken office about a month earlier.  She testified in a deposition that restoring civility to the council was one of her goals.

Mayor Curtis: We'll take a five[-]minute recess. [Gavels.]

Accounts differ as to precisely what happened next.  According to Lockaby, she did not believe she said anything as the recess got underway.  Instead, she "gathered [her] stuff and . . . walked out."  Sgt. Randolph, who was serving as sergeant-at-arms, made sure she left the building.  In her deposition, Lockaby testified, "I'm sure if I had not gone willingly, then I would have been physically escorted out."  Lockaby also testified that during the exchange at the city council meeting, she never raised her voice.

Others remember Lockaby's exit from the meeting slightly differently.  In an affidavit, Sgt. Randolph recalled that "Councilmember Lockaby said something to the effect of[,] 'That's fine.  I was leaving anyway.'"  The city clerk remembered a similar statement.

At the time, the Simpsonville Code of Ordinances provided, relevant to this action:

> The mayor shall be recognized as the head of the city government for all ceremonial purposes and by the governor for purposes of military law.  He or she shall preside over the meetings of the city council, but shall have no regular administrative duties. The mayor shall provide the city council with information, guidance[,] and leadership in matters of policy determination.

The ordinances additionally stated: "Except as otherwise required by state law or ordinance, all proceedings of council shall be governed by the latest edition of 'Robert's Rules of Order, Newly Revised,' and the city attorney shall act as parliamentarian."

Finally, Rule 2-67 stated:

> (a) Any person who speaks at a city council meeting shall conduct himself or herself in a manner appropriate to the decorum of the meeting and shall not use any profane, abusive or obscene language nor any fighting [words] or otherwise engage in disorderly conduct.  Any person who makes such remarks or otherwise engages in disorderly conduct which disrupts or otherwise impedes the orderly

conduct of a city council meeting shall, at the discretion of the presiding officer, be barred from further audience before city council during that meeting and may be removed from the building.

(b) Any law enforcement officer who is serving as sergeant-at-arms of city council shall carry out all orders and instructions given by the presiding officer for the purpose of maintaining order and decorum at the city council meeting. Upon instruction of the presiding officer, it shall be the duty of such law enforcement officer to remove from the city council meeting any person who is disturbing the proceedings of the city council.

In February 2018, Lockaby filed an action against the City, Mayor Curtis, and Sgt. Randolph. In her suit, Lockaby brought three claims: (1) violation of her civil rights under 42 U.S.C. § 1983, specifically with regard to her First Amendment and Fourth Amendment rights; (2) gross negligence; and (3) false imprisonment.

In February 2019, Respondents filed a motion for summary judgment.[4] The circuit court conducted a hearing on April 25, 2019, and took the matter under advisement for 15 days to allow for more discovery. On July 1, 2019, the court granted summary judgment, finding that (1) Lockaby failed to exhaust her administrative remedies by not appealing Curtis's decision to the full council; and (2) her claims were "barred by legislative immunity." Subsequently, the circuit court denied Lockaby's motion for reconsideration. This appeal followed.

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder." *Englert, Inc. v. LeafGuard USA, Inc.*, 377 S.C. 129, 134, 659 S.E.2d 496, 498 (2008) (quoting *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001)). "When reviewing a grant of summary judgment, the appellate court applies the same standard applied by the [circuit] court . . . ." *Id.* at 133–34, 659 S.E.2d at 498. "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[4] At some point, the circuit court found there were "no claims under the [South Carolina Tort Claims] Act against the individual defendants." The order to this effect does not appear in the record.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 134, 659 S.E.2d at 498 (quoting Rule 56(c), SCRCP). "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Id.*

"[I]n cases requiring a heightened burden of proof or in cases applying federal law . . . the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment." *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 330–31, 673 S.E.2d 801, 803 (2009) (footnote omitted). Even in cases in which the non-moving party faces the lower burden of proof involved in state claims, our courts have noted that "a scintilla is a perceptible amount. There still must be a verifiable spark, not something conjured by shadows." *Gibson v. Epting*, 426 S.C. 346, 352, 827 S.E.2d 178, 181 (Ct. App. 2019).

Any disagreements over evidence or its meaning must be material, in addition to being both genuine and concerning an issue of fact. *See id.* ("Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." (alteration in original) (quoting, in parenthetical, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

## LAW/ANALYSIS

Lockaby argues the circuit court erred in finding that her action was barred by legislative immunity because the decision to eject her from the council meeting was not legislative in nature. We disagree.

For nearly 25 years, the legislative immunity of local lawmakers in civil rights actions has been openly acknowledged by the U.S. Supreme Court. *See Bogan v. Scott-Harris*, 523 U.S. 44, 53–54 (1998) ("[W]e now make explicit what was implicit in our precedents: Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities."). Similarly, our Tort Claims Act and our state supreme court recognize the doctrine of legislative immunity. *See* S.C. Code Ann. § 15-78-60(1) (2005) (providing that a "governmental entity is not liable for a loss resulting from . . . legislative, judicial, or quasi-judicial action or inaction"); *Richardson v. McGill*, 273 S.C. 142, 146, 255 S.E.2d 341, 343 (1979).

In those contexts, our state and federal courts have occasionally wrestled with what constitutes a "legislative act." For example, in a case dealing with the

constitutional immunity of Congress,[5] the U.S. Supreme Court discussed at some length the boundaries of the immunity. *See generally Gravel v. United States*, 408 U.S. 606 (1972). Both parties cite *Gravel* in their briefs, and we find some portions of the decision instructive:

> Legislative acts are not all-encompassing. The heart of the [Speech and Debate] Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be *an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings* with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberations."

*Id.* at 625 (emphasis added) (quoting *United States v. Doe*, 455 F.2d 753, 760 (1st Cir. 1972)). *See also Forrester v. White*, 484 U.S. 219, 224 (1988) ("[W]e examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.").

We have little trouble concluding that disciplinary actions targeted at a council member for the sake of keeping order during a meeting is a legislative function. While other jurisdictions are split on this question, we consider our conclusion as the better view. *See Whitener v. McWatters*, 112 F.3d 740, 744 (4th Cir. 1997) ("[B]ecause citizens may not sue legislators for their legislative acts, legislative bodies are left to police their own members. Absent truly exceptional circumstances, it would be strange to hold that such self-policing is itself actionable in a court."); *id.* ("This history and long practice confirm that the disciplinary action taken by the Loudoun County Board of Supervisors against one of its members was legislative in

---

[5] *See* U.S. Const. art. I, § 6 (providing that members of Congress "shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place." (emphasis added)).

nature. . . .  As legislative speech and voting is protected by absolute immunity, the exercise of self-disciplinary power is likewise protected."); *see also Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606, 618 (W.D. Mich. 2009).

Nor do we think the fact that the action was taken by Mayor Curtis alone, rather than the council as a whole, removes it from the realm of legislative action. The *Bogan* court and other federal authority repeatedly stress that legislative immunity does not depend on who carries out the act—or even why—but on what act they carry out.  *See Bogan*, 523 U.S. at 54 ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."); *see also Chase v. Senate of Virginia*, 539 F. Supp. 3d 562, 571 (E.D. Va. 2021) ("Because legislators generally cannot perform their legislative roles without the assistance of aides, legislative immunity extends to the agents of legislators.  Lower [federal] courts have extended that premise to find that even legislative employees in administrative roles can be entitled to legislative immunity." (citation omitted)); *cf. Butz v. Economou*, 438 U.S. 478, 511 (1978) (holding, in a case concerning federal administrative judges: "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities.").

In sum, the decision to eject Lockaby from the council meeting was a legislative act.  Whether we believe the decision was rash and ill-advised is immaterial.  Therefore, we uphold the circuit court's ruling that Lockaby's suit is barred by legislative immunity.  Because our resolution of this issue is dispositive, we decline to address Lockaby's remaining issues.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing that an appellate court need not address the remaining issues when resolution of a prior issue is dispositive).

## CONCLUSION

Accordingly, we affirm the circuit court's order.

**AFFIRMED.**

**MCDONALD, J., and HILL, A.J., concur.**