(No. 21746.—

LILLIAN McQUILLEN, Defendant in Error, *vs.* WILLIAM H. EVANS, Plaintiff in Error.

*Opinion filed June 22, 1933—Rehearing denied October 11, 1933.*

240

DeYoung, J., took no part.

Miller, Gorham, Wales & Adams, (Amos C. Miller, Edward R. Adams, and Herbert C. DeYoung, of counsel,) for plaintiff in error.

Clarence Kammermann, and J. J. Cooke, for defendant in error.

Mr. Chief Justice Orr delivered the opinion of the court:

This action was brought to recover money loaned and damages for breach of an alleged verbal contract of marriage. A declaration in assumpsit consisting of two counts was filed in the superior court of Cook county by Lillian McQuillen, defendant in error, (herein called plaintiff,) against plaintiff in error, William H. Evans (herein called defendant). It charged that plaintiff loaned $2200 to defendant, and that he had promised to marry her on successive dates between November 1, 1919, and May 5, 1924. A plea of the general issue was filed to the money-loaning

count, and the other count was met with the general issue and a plea of the five-year Statute of Limitations. Two special pleas also charged plaintiff with knowledge that at the time defendant made the promise of marriage he had a wife living. Issue was joined, and following a jury trial plaintiff obtained a judgment for $16,000, which was affirmed on review by writ of error from the Appellate Court for the First District. The cause comes here on leave granted by *certiorari*.

The parties first met in Chicago in September, 1919. In the following November defendant proposed marriage to plaintiff and his proposal was accepted. At this time defendant was engaged in developing a metal reamer, used in automotive work. He was much discouraged, but the encouragement and material assistance of plaintiff caused him to persist in his work. The marriage was deferred from time to time because defendant lacked the financial means to maintain a home and wife. In May, 1924, defendant told plaintiff that he was making $50 a week and that they would be married on Decoration day, 1924. This was agreeable to plaintiff, who made preparations for the wedding. When they started out together to be married on Decoration day defendant informed plaintiff that he could not marry her, as he already had a wife and family in California. This news was a surprise to her and was her first knowledge that he had a wife and children. Defendant then assured her that he would secure a divorce from his wife and when that was obtained they would be married. No breach of the promise to marry then occurred, as defendant did not refuse to carry out his former promise but only postponed the time of marriage until he could secure a divorce. Plaintiff continued going with defendant and waiting for him to obtain a divorce until March, 1929. Two years earlier, in March, 1927, defendant told plaintiff that he did not care to see her any more and that they were not going to get married. After this declaration he made

no further agreements or offers to marry plaintiff and their relations were not as friendly or their visits together as frequent as they had been in the past. At various times from 1921 to 1923 plaintiff gave defendant different sums of money, aggregating slightly over $1000. She testified that in October, 1928, she asked him if he was going to give her a birthday present, and he replied that he would not but that he expected to pay her back the $1000 he owed her.

One of the pleas of defendant upon which reliance is now based was that the cause of action did not accrue to plaintiff at any time within five years before the commencement of the suit. The evidence shows that this plea is not founded upon the fact. Whether the breach be said to be in May, 1924, or in March, 1927, the suit, which was begun on March 19, 1929, was well within the five-year limitation in point of time.

The evidence shows only one promise to marry, made in November, 1919. At this time, and until Decoration day, 1924, plaintiff had no knowledge that defendant was married. A married man may become liable upon a promise of marriage if plaintiff at the time the promise is made is not aware that defendant has a wife living. (*Paddock v. Robinson,* 63 Ill. 99.) In such case the promisor cannot avail himself of the fraudulent concealment of his marriage as a defense to an action upon the contract. *Kelley v. Riley,* 106 Mass. 339; *Cammerer v. Muller,* 14 N. Y. Supp. 511; *Carter v. Rinker,* 174 Fed. 882.

For a proper consideration of this case it must be borne in mind that during the period from November, 1919, when the promise to marry was made, until March, 1929, when this suit was begun, the plaintiff did not occupy the same continuing relation toward the defendant. During the first four and a half years, from November, 1919, until May, 1924, plaintiff was not aware that defendant had a wife living—in other words, she was then an innocent victim

of defendant's deceit. During that period the jury might have properly allowed her not only actual damages for the breach which later occurred but also punitive or exemplary damages. After acquiring knowledge of defendant's married status and perfidy, however, she continued to go with him for five more years. From May, 1924, until March, 1927, when he finally breached the marriage promise by telling her flatly he would not marry her, she no longer occupied the position of an innocent person but was, as she stated, waiting for him to secure a divorce from his wife. During this period she was not entitled to recover any damages, actual or punitive, as the execution of the promise was then based upon the contingency of divorce, not recognized as valid in a court of justice. (*Paddock* v. *Robinson, supra.*) After the breach of the promise in March, 1927, until suit was instituted in 1929, nothing could have occurred to enlarge plaintiff's scope of damages beyond those provable at the time of the breach, as she was still chargeable with knowledge of defendant's marriage. Even the breach of a new promise to marry, made under such circumstances and during such period, would furnish no legal basis for recovery.

A review of the record shows that the trial court, both in the introduction of evidence and in instructions to the jury, failed to take the above mentioned distinctions into consideration. In the course of the trial, which started June 15, 1931, plaintiff offered in evidence two instruments. The first (exhibit 8) was a financial statement of the Evans Flexible Reamer Corporation, made for a Chicago bank on January 17, 1930, purporting to show the financial condition of the corporation as of December 31, 1929. The defendant, Evans, was the president of that corporation and owned nearly all of its capital stock. The statement in question was made by the secretary of the corporation, while the affidavit thereto was executed by the defendant. A second financial statement (exhibit 9) signed and sworn

to by the secretary of the corporation, dated January 8, 1931, purported to show the financial condition of the corporation as of December 31, 1930. The exhibits were allowed in evidence over general objections of the defendant which went to their relevancy.

Exhibit 9 was not signed in any manner by defendant and the objection to its admission should therefore have been sustained. Exhibit 8, which was sworn to by defendant as president of the corporation, was properly admitted in evidence as it tended to furnish some evidence of his financial worth by showing the net value of the corporate stock largely owned by him. It is the common practice in such cases to allow specific evidence of defendant's pecuniary circumstances to be introduced. The contrary has been held in a few cases, but the great weight of authority and reason is in support of the practice stated. 3 Elliott on Evidence, sec. 1888; *Vaughn* v. *Smith*, 177 Ind. 111, 96 N. E. 594; *Vireling* v. *Binder*, 113 Iowa, 337, 85 N. W. 621; *Dent* v. *Pickens*, 34 W. Va. 240; *Reed* v. *Clark*, 47 Cal. 194; *Clark* v. *Hodges*, 65 Vt. 273, 26 Atl. 726; *McPherson* v. *Ryan*, 59 Mich. 33, 26 N. W. 321; *Birum* v. *Johnson*, 87 Minn. 362, 92 N. W. 1; *Casey* v. *Gill*, 154 Mo. 181, 55 S. W. 219; *Fisher* v. *Kenyon*, 56 Wash. 8, 104 Pac. 1127; *Salchert* v. *Reinig*, 135 Wis. 194, 115 N. W. 132; *Crosier* v. *Craig*, 47 Hun, (N. Y.) 83.

The defendant further urges that exhibits 8 and 9 were improperly admitted because they were too remote from the time of the breach. The authorities examined do not support this contention. It is true, as we have said above, that plaintiff was not entitled to recover any damages, actual or punitive, which may have been suffered by her after May, 1924, when she learned that defendant was a married man. After this date the execution of the marriage promise was based upon an illegal consideration—*i. e.,* that defendant would secure a divorce from his wife. While plaintiff could not prove damage to herself after this date, she was

nevertheless free to prove the financial worth of defendant as it existed at any time between the time of the engagement and the time of trial. This was the rule enunciated in the only Illinois cases where the subject has been considered. In *Sprague* v. *Craig,* 51 Ill. 288, this court held that evidence as to defendant's financial worth at the time the marriage contract was entered into was not objectionable, and also held that in rebuttal it was proper for defendant to show that some of his property had been sold for mortgage indebtedness after the commencement of the suit for breach of promise. In *Douglas* v. *Gausman,* 68 Ill. 170, we held that the trial court did not err in admitting evidence of defendant's pecuniary circumstances at the time of the engagement, saying: "We are unable to perceive any objection to this evidence. It tended to show what he was worth. If it was over-estimated, or if he had sustained losses, he could have shown the fact. As he failed to show what he was worth at the time of the trial, either by himself when on the stand or by other witnesses, the jury were warranted in believing that he was worth that sum, or more, at the time of the trial." No reason has been assigned which would now warrant us in changing the rule established in these two former cases.

Instruction 4 given for plaintiff relating to punitive damages was as follows:

"You are further instructed by the court that in this case if you should find for the plaintiff you have the right in arriving at your verdict to award exemplary or punitive damages in addition to actual damages in so far as your verdict in connection with damages for the breach of promise, if any, is concerned, and the same may be allowed in addition to actual damages if the jury believe from the evidence that exemplary and punitive damages should be awarded."

The giving of this instruction was reversible error, as it not only failed to limit the recovery of punitive damages

to the period (1919-1924) during which plaintiff was being deceived by defendant, but also failed to instruct the jury as to the peculiar circumstances of aggravation which must be present to justify an award of punitive damages. Instruction 5 of the plaintiff did not cure this defect, as it only set forth those elements upon which actual damages could be awarded. The amount of the verdict here was large, and defendant must have suffered grave harm by the giving of instruction 4.

In making the contract of marriage, or in its breach, defendant must have been guilty of fraud and deceit or moved by evil motives in order to create a liability for the payment of punitive damages. (*Jacoby* v. *Stark*, 205 Ill. 34.) The fact that two sisters of defendant testified that plaintiff said to them that their brother should establish her in a flat and live with her without benefit of marriage does not exhibit an attempt to maliciously besmirch plaintiff's moral character. Both witnesses who related the above to the jury said they believed plaintiff to be a good woman, morally. Granting, however, that this testimony did show malice, it did not preclude the necessity of the jury being properly instructed upon the elements to be considered in an award of punitive damages.

Plaintiff's given instruction 12 told the jury that the testimony of any witness who knowingly and falsely testified to any matter in issue could be entirely disregarded. While the instruction should have been limited to any matter material to the issue, we cannot see where defendant was unduly prejudiced in any way by the giving of this instruction.

Instruction 13 for plaintiff instructed the jury that a married person can enter into a contract of marriage and thereby become liable to respond in damages to the party with whom the married person contracts, provided the party contracted with is ignorant of the marriage. Defendant complains that the element of breaching the contract is left

out of this instruction. That is splitting hairs. Any juror of ordinary intelligence, after reading that instruction, would know that a breach of the contract is necessary before a married person would be liable to respond in damages.

The court by plaintiff's instruction 14 told the jury that they were the judges of the credibility of the various witnesses and of what weight should be given to the testimony of each and what factors they should take into consideration in determining the weight of such testimony. The instruction concluded with a statement that from the testimony in the case the jury were to decide how much weight they should give to the testimony of each witness. It is criticised because it did not conclude with a statement to the effect that from the above stated factors the jury were to decide how much weight to give to the testimony of each witness. It is problematical what, if any, damage was done to defendant by the giving of this instruction. To say one way or the other is to hazard a statement based upon conjecture, only. Failing to detect any harm done, we can only say that the instruction did not commit the error of misleading the jury upon any important or decisive point in the case.

Instruction 3 for plaintiff dealt with the matter of awarding damages to her to the amount of $1000. It was based upon the allegation of plaintiff that defendant had promised, within the five-year period preceding the trial, that he would re-pay to her his debt of $1000. Defendant complains that the instruction was peremptory in form and left no choice for the jury to exercise their beliefs upon that issue. The fact that the instruction omits the circumstance that defendant might have re-paid this money to plaintiff is urged by defendant with far more insistence than its importance deserves. As a matter of law the instruction did not preclude the jury from considering prior payment of the debt had any evidence been introduced on that point.

248

For the reasons stated the judgment of the Appellate Court for the First District affirming the judgment of the superior court of Cook county is reversed and the case is remanded to the superior court for a new trial.

*Reversed and remanded.*

Mr. JUSTICE DEYOUNG took no part in this decision.