22178

Christine BRADLEY, Respondent, v. David SOMERS, Appellant.

(322 S. E. (2d) 665)

*Coming B. Gibbs, Jr.,* of *Gibbs & Holmes,* Charleston, *for appellant.*

*Ann M. Stirling* and *Michael P. O'Connell* of *Stirling &. O'Connell,* Charleston, *for respondent.*

Heard Oct. 3, 1984.

Decided Nov. 7, 1984.

HARWELL, Justice:

The respondent Christine Bradley initiated this breach of promise to marry action against the appellant Captain David Somers. The jury found the appellant liable and rewarded the respondent $60,000 in actual damages. We reverse and remand for a new trial solely on the issue of damages.

The facts in this case weave a web of tangled love affairs. The respondent (Christine) married a Marine Corps major when she was quite young. After a number of years of marriage, during a period when Christine's husband was at sea a married girlfriend of Christine's invited her to dinner. The hostess had invited a date for herself and one for Christine. Christine's date was the appellant, Captain David Somers, USN, then a married man. The Captain and Christine began to date. (They even attended the theatre with tickets that Christine's husband had purchased.) The Captain and Christine soon commenced sexual relations; Christine testified that she was never physically attracted to the Major. Thereafter, Christine and the Captain decided to divorce their spouses in order to marry each other. By May 11, 1982 the final divorce for each had been obtained, and wedding plans continued.

In preparation for the wedding date of June 20, 1982, Captain Somers and Christine ordered special wedding bands from the Smithsonian Institution. They also arranged for the ceremony to take place in the First Presbyterian Church in Hilton Head, to be performed by Dr. Kinchelowe, the church pastor. The parties also engaged an organist, caterer, photographer, florist, and baker. In preparation for the wedding, Christine purchased a wedding dress, silk bouquet, shoes, and nightgown. She bought a Cross desk set as a gift for the groom bearing the engraving "David W. Somers, Jr., June 20, 1982."

The night before the wedding, the groom confessed to the bride that he had cold feet. However, his fears eventually seemed to subside. On the wedding day, the wedding guests began to gather at the church. Christine donned her wedding dress, and the organ began to play. Christine and the Captain went to the pastor's office to sign the marriage license. The Captain then told his bride that he could not go through with the marriage and that "there is someone else." After he told her the shocking news, Christine saw the Captain's daughter, Jennifer, standing nearby dressed in sweatpants and a swimsuit. The Captain testified that he had not told Jennifer about the wedding for fear she would try to stop it.

Jennifer testified that she was extremely upset that her father had not told her of his wedding plans. As a matter of fact, Jennifer was fond of David's "buddy" Thelma Fisk, whom he married about five months later. During the discussions between the bride and groom, Jennifer, and the minister, the time for the ceremony passed. The organist continued to repeat the same song, and the audience became uncomfortable. Finally, Dr. Kinchelowe announced to the guests that the wedding would not take place.

Christine was humiliated, devastated, nauseated, and, shortly thereafter, suicidal. She obtained psychiatric treatment for which she received a $3,000 statement. Christine testified that, to this day, she is not normal, has fits of raving, and has a severe distrust of men.

The major issue on appeal concerns Christine's testimony regarding her first marriage and the judge's refusal to charge the jury that it could not award damages for the dissolution of that marriage. In response to questions concerning her first marriage, the respondent testified: "I would have had the companionship of a man I cared for. I would have had the financial support of a husband.... The marriage with Frank could have been saved ... had it not been for the intervention of David Somers and the promise and prospect of a better life with him." We believe that admitting the testimony and refusing to make a curative charge constitute prejudicial error.

Damages for breach of promise to marry are confined to those relating to the position the rejected spouse (Christine) would have held had she married the ap-

pellant. She is entitled to recover for the loss of the pecuniary and social advantages of the promised marriage. Also, her mental anguish, humiliation, and injury to health and psyche are elements of damages. In addition, she may recover for losses sustained from expenditures made in preparation of marriage. The jury may consider the monetary value of a marriage which would have given Christine a home. See 12 Am. Jur. (2d) *Breach of Promise*, §§ 26, 27 (1964).

However, the courts have held that one who breaks an engagement in order to marry another may not recover damages against the later suitor who breaches his promise, for the loss of the opportunity to marry the first suitor. 73 A.L.R. (2d) 553, 574 § 13(a) (1960), citing *Hahn v. Bettingen*, 81 Minn. 91, 83 N. W. 467 (1900). The rationale for disallowing these damages is that to enable an individual to recover damages for his own breach of an engagement is ethically and legally unsound.

By the same token, Christine cannot recover damages for the Captain's inducement of her divorce because to do so would reward her for her own wrongdoing. *See McQuillen v. Evans*, 353 Ill. 239, 187 N. E. 320 (1933). A promise of marriage made while married to another is void under public policy, and the persons who make such a promise are "morally unfaithful to the marriage tie." *Strickland v. Anderson*, 186 S. C. 482, 196 S. E. 184 (1938).[1] We accordingly hold that testimony regarding Christine's financial or social situation during her first marriage and the quality of that marriage was irrelevant and should have been excluded. In addition, the jury should have been charged that Christine could not recover damages from the Captain for encouraging her to divorce her first husband. The damages are confined to those arising from Captain Somers' breach of his own promise to marry Christine.

The appellant urges this court to abolish the cause of action for breach of marriage promise. We decline to do so. Most states which have abolished the cause of action have done so legislatively. *See* statutes collected in 5 Am. Jur. Pl. & Pr. Forms (Rev. ed.), *Breach of Promise* (1984 Supp).

---

[1] The cause of action in the case at bar arises from the breach of the renewed promise, made *after* the dissolution of the parties' earlier marriages.

We therefore hold that the breach of marriage promise cases remain viable. *Evans v. Terry*, 1 Brev. 80 (1802); *Capehart v. Carodine*, 4 Strob. 42 (1849); *Jones v. Fuller*, 19 S. C. 66 (1882); *Coggins v. Cannon*, 112 S. C. 225, 99 S. E. 823 (1919); *Strickland v. Anderson*, 186 S. C. 482, 196 S. E. 184 (1938).

The appellant further asserts that he is entitled to judgment because the evidence showed no breach but rather a postponement of the date of performance of the marriage. We disagree. Although on the day Captain Somers refused to marry Christine at the church, he later offered to marry her, the evidence fails to support the contention that the date was merely postponed. "[I]t is no defense to an action for breach of a promise to marry that the defendant, after the contract to marry had been terminated by his breach thereof, offered to marry the plaintiff and the plaintiff refused to accept that offer." 12 Am. Jur. (2d), *Breach of Promise*, § 22 (1964).

The remaining arguments lack merit. The judgment below is, accordingly,

Reversed and remanded for a new trial solely on the issue of damages.

NESS, Acting C. J., PAUL M. MOORE, Acting Associate Justice, and GREGORY and CHANDLER, JJ., concur.