726 S.E.2d 221

Matthew **CAMPBELL**, Appellant/Respondent,

v.

Ashley **ROBINSON**, Respondent/Appellant.

No. 4969.

Court of Appeals of South Carolina.

Heard Oct. 5, 2011.

Decided May 9, 2012.

David Alexander, of Greenville, for Appellant/Respondent.

Kenneth C. Porter, of Greenville, for Respondent/Appellant.

THOMAS, J.

These cross appeals arise out of a broken engagement between Matthew Campbell and Ashley Robinson. Campbell appeals the trial court's (1) denial of his motions for directed verdict and judgment notwithstanding the verdict (JNOV) and (2) overruling of his objections to the jury charge and verdict form. Robinson appeals the trial court's denial of her post-trial motions. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Campbell proposed and presented a ring to Robinson in December 2005. In a spring 2006 phone conversation, they agreed to postpone the wedding. The engagement was later cancelled, and a dispute ensued over ownership of the ring.

Campbell filed suit against Robinson, demanding a jury trial and seeking (1) declaratory judgment that he owned the ring and was entitled to the ring's return or equivalent value; (2) claim and delivery of the ring, plus damages for the ring's wrongful retention; and (3) restitution for the benefit Robinson received while possessing the ring. Robinson answered and raised a counterclaim for breach of promise to marry, arguing she was entitled to damages for her prenuptial expenditures, mental anguish, and injury to health.

At trial, Robinson testified the engagement ended simply because Campbell cancelled it. She also testified that after the engagement was cancelled, she asked Campbell twice

whether she should return the ring. She maintained that Campbell, in response to her inquiries, said she should keep the ring. Campbell testified that he gave Robinson the ring believing they would get married. He denied ending the engagement by himself and contended the cancellation was mutual. He also denied telling Robinson that she should keep the ring. He contended Robinson refused to give him the ring after he asked for its return.[1]

Campbell moved for directed verdict on Robinson's action for breach of promise to marry, arguing South Carolina no longer recognizes the claim. He also moved for directed verdict on his claims, maintaining he was entitled to the ring because the ring was a gift conditioned upon the marriage. Robinson moved for directed verdict on all of the parties' causes of action. The trial court held (1) South Carolina has not abolished actions for breach of promise to marry and (2) South Carolina courts hinge entitlement to the ring upon who was "at fault" in the engagement's cancellation. Consequently, the trial court explained that Campbell would receive the ring if Robinson was at fault in terminating the engagement. If Campbell was at fault, Robinson would keep the ring, and if Campbell breached the promise to marry, Robinson could recover damages. The trial court rejected Campbell's argument that he could recover damages on his claims.

The trial court charged the jury consistent with the above explanation and provided a verdict form asking the jury to determine which "party was responsible for the termination of the contract to marry." The court then overruled Campbell's jury charge and verdict form objections, which were based upon the same grounds he raised at the directed verdict stage. The jury found that Campbell was responsible for the termination of the engagement but also found that Robinson was not entitled to any damages. Campbell moved for JNOV or a new trial absolute. Robinson moved for JNOV and "a new trial on the sole issue of damages," arguing the jury rendered an inconsistent verdict. The trial court denied the motions, and this appeal followed.

---

1. Neither party contends that the ring was a family heirloom or that they shared its cost.

18

## ISSUES ON APPEAL

1. Did the trial court err in denying Campbell's motion for directed verdict on Robinson's breach of promise to marry action?

2. Did the trial court err in denying Campbell's motions for directed verdict and JNOV on his claims?

3. Did the trial court err in overruling Campbell's objections to the jury charge and verdict form?

4. Did the trial court err in denying Robinson's post-trial motions for her breach of promise to marry action?

## CAMPBELL'S APPEAL

### I. The Action for Breach of Promise to Marry

Campbell argues the trial court erred in denying his motion for directed verdict on Robinson's breach of promise to marry action because South Carolina courts no longer recognize the claim. He acknowledges our supreme court in *Bradley v. Somers*, 283 S.C. 365, 322 S.E.2d 665 (1984), explicitly refused to eliminate promise to marry claims. *Id.* at 368–69, 322 S.E.2d at 667. However, he maintains *Russo v. Sutton*, 310 S.C. 200, 422 S.E.2d 750 (1992), effectively overruled *Bradley* because it established a policy disfavoring "heart balm" actions. We disagree.

Certain heart balm actions similar to breach of promise to marry claims have been abolished. *See Russo*, 310 S.C. at 204–05, 205 n. 5, 422 S.E.2d at 753, 753 n. 5 (abolishing the heart balm action for alienation of affection and recognizing our legislature abolished the heart balm action for criminal conversation); *Heape v. Heape*, 335 S.C. 420, 424, 517 S.E.2d 1, 3 (Ct.App.1999) (noting *Russo's* holding as to alienation of affection and the legislature's action as to criminal conversation). However, promise to marry actions have not been expressly abolished, and we may not overrule supreme court precedent such as *Bradley*. *See* S.C. Const. art. V § 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents."). Consequently, we affirm the denial of Campbell's directed verdict motion.

## II. Directed Verdict and JNOV

Campbell contends the trial court erred in denying his motions for directed verdict and JNOV because the trial court hinged ownership of the ring upon who was at fault in the engagement's cancellation. We agree that fault does not determine ownership of the ring but affirm the denial of Campbell's motions.[2]

"When reviewing the denial of a motion for directed verdict or JNOV," we must "view the evidence and inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party." *Pridgen v. Ward,* 391 S.C. 238, 243, 705 S.E.2d 58, 61 (Ct.App.2010) (internal quotation marks omitted). We will reverse the trial court's ruling only "when there is no evidence to support the ruling or when the ruling is controlled by an error of law." *Id.* (internal quotation marks omitted).

An engagement ring by its very nature is a symbol of the donor's continuing devotion to the donee. Once an engagement is cancelled, the ring no longer holds that signifi- cance. *See, e.g., Heiman v. Parrish,* 262 Kan. 926, 942 P.2d 631, 634 (1997); *McIntire v. Raukhorst,* 65 Ohio App.3d 728, 585 N.E.2d 456, 457–58 (1989); *Lindh v. Surman,* 560 Pa. 1, 742 A.2d 643, 645 (1999); *Brown v. Thomas,* 127 Wis.2d 318, 379 N.W.2d 868, 872 (1985), *abrogation on other grounds recognized by Koestler v. Pollard,* 162 Wis.2d 797, 471 N.W.2d 7, 9 n. 4 (1991); 38A C.J.S. *Gifts* § 41 (2011). Thus, if a party presents evidence a ring was given in contemplation of mar- riage, the ring is an engagement ring. As an engagement ring, the gift is impliedly conditioned upon the marriage

---

2. Robinson argues the trial court properly denied Campbell's motions for directed verdict and JNOV because the action for breach of promise to marry determines entitlement to the ring. We disagree. The action- able conduct underlying breach of promise to marry claims is the act of breaking the promise to marry; it does not include the conduct that leads to the breakup. *See Coggins v. Cannon,* 112 S.C. 225, 229, 99 S.E. 823, 824 (1919) ("[T]he issues were: (1) Did the defendant make the promise to marry ... ? (2) Did the defendant break that promise? (3) If so, was the plaintiff damaged ... ?"). Moreover, the claim for breach of promise to marry does not determine which person is entitled to an engagement ring. The claim seeks tort damages to grant econom- ic redress for harm and loss of expectation caused by the rejection. *Bradley,* 283 S.C. at 367–68, 322 S.E.2d at 666–67.

taking place. Until the condition underlying the gift is fulfilled, the attempted gift is unenforceable and must be returned to the donor upon the donor's request. *Cf. Watkins v. Hodge*, 232 S.C. 245, 249, 101 S.E.2d 657, 658 (1958) ("[T]he only reasonable inference is that there was not a gift. . . . In common parlance, to be legally binding a gift must have no strings attached, such as admittedly existed in this case."); *Lynch v. Lynch*, 201 S.C. 130, 137, 146, 21 S.E.2d 569, 572, 576 (1942) ("[A] gift to be operative must be executed and must take effect immediately and irrevocably, for the obvious reason that if anything remains to be done the title to the property does not pass. . . . Thus, mere intention to give without delivery is unavailing; the intention must be executed by a complete and unconditional delivery." (internal quotation marks omitted)).

■■ The person challenging the assertions that the ring is an engagement ring and therefore impliedly conditioned upon marriage has the burden of presenting evidence to overcome those assertions. This burden may be satisfied by presenting evidence showing that the ring was not given in contemplation of marriage—it was not an engagement ring— or was not conditioned upon the marriage. If the parties do not dispute that the ring was originally an engagement ring conditioned upon the marriage, the burden may also be satisfied by presenting evidence establishing the ring subsequently became the challenger's property. *See, e.g., Hawkins v. Smith*, 37 Ga.App. 781, 141 S.E. 917, 917 (1928) (recognizing that a conditional gift of an engagement ring could become an absolute gift after the engagement was cancelled).

Jurisdictions differ on whether ownership of an engagement ring may be based upon fault in the breakup. Courts that do consider fault generally reason that it is unfair for a person to retain the fruit of a broken promise.[3] In contrast, courts with a "no-fault" approach often base their decision upon the abolishment of heart balm actions, adoption of no-fault divorce, desire to limit courtroom dramatics, and reduction of

---

**3.** *See, e.g., De Cicco v. Barker*, 339 Mass. 457, 159 N.E.2d 534, 535 (1959); *Clippard v. Pfefferkorn*, 168 S.W.3d 616, 620 (Mo.Ct.App.2005); *Gikas v. Nicholis*, 96 N.H. 177, 71 A.2d 785, 785–86 (1950); *Curtis v. Anderson*, 106 S.W.3d 251, 256 (Tx.Ct.App.2003); *Spinnell v. Quigley*, 56 Wash.App. 799, 785 P.2d 1149, 1151 (1990).

the difficulty in determining the issue of what constitutes fault in the decline of a relationship.[4]

We hold that the consideration of fault has no place in determining ownership of an engagement ring. Generally, gift law will dictate who has the legal right to the ring.

In other contexts, the culpability of one's conduct is determined by legal standards such as the reasonable person. *See, e.g., Berberich v. Jack,* 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011) ("[N]egligence is the failure to use due care, i.e., that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances." (internal quotation marks omitted)). In contrast, no legal standard exists by which a fact finder can adjudge culpability or fault in a prenuptial breakup. *See, e.g., Heiman,* 942 P.2d at 637–38 ("What is fault or the unjustifiable calling off of an engagement? ... [S]hould courts be asked to determine which of the following grounds for breaking an engagement is fault or justified? (1) The parties have nothing in common; (2) one party cannot stand prospective in-laws; (3) a minor child of one of the parties is hostile to and will not accept the other party; (4) an adult child of one of the parties will not accept the other party; (5) the parties' pets do not get along; (6) a party was too hasty in proposing or accepting the proposal; (7) the engagement was a rebound situation which is now regretted; (8) one party has untidy habits that irritate the other; or (9) the parties have religious differences. The list could be endless."); *Aronow,* 538 A.2d at 853–54 ("What fact justifies the breaking of an engagement? The absence of a sense of humor? Differing musical tastes? Differing political views? ... They must be approached with intelligent care and should not happen without a decent assurance of success. When either party lacks that assurance, for whatever reason, the engagement should be broken. No justification is needed.

4. *See, e.g., Fierro v. Hoel,* 465 N.W.2d 669, 672 (Iowa Ct.App.1990); *Heiman,* 942 P.2d at 637; *Meyer v. Mitnick,* 244 Mich.App. 697, 625 N.W.2d 136, 139–40 (2001); *Aronow v. Silver,* 223 N.J.Super. 344, 538 A.2d 851, 853–54 (Ch.Div.1987); *Vigil v. Haber,* 119 N.M. 9, 888 P.2d 455, 457 (1994); *Gaden v. Gaden,* 29 N.Y.2d 80, 323 N.Y.S.2d 955, 272 N.E.2d 471, 476 (1971); *Lyle v. Durham,* 16 Ohio App.3d 1, 473 N.E.2d 1216, 1218–19 (1984); *Lindh,* 742 A.2d at 646; *Brown,* 379 N.W.2d at 873.

Either party may act. Fault, impossible to fix, does not count.").

South Carolina's use of fault in dividing property within the family court's jurisdiction does not mandate the use of the fault approach for determining ownership of engagement rings when the marriage fails to occur. When the family court apportions property based upon fault, the parties in the dispute have a special statutory right in the subject property. *See* S.C.Code Ann. § 20–3–610 (Supp.2011) ("During the marriage a spouse shall acquire ... a vested special equity and ownership right in the marital property...."); S.C.Code Ann. § 20–3–630(A) (Supp.2011) (providing that "marital property" is, except for certain enumerated exclusions, "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation"); S.C.Code Ann. § 20–3–630(B) (Supp.2011) (providing that the family court lacks jurisdiction to apportion nonmarital property); *see also* S.C.Code Ann. § 20–3–620(B)(2) (Supp.2011) ("In making apportionment, the court must give weight in such proportion as it finds appropriate to ... marital misconduct or fault of either or both parties...."). Outside of property apportionment during a divorce, that statutory right does not exist.

Our legislature has long expressed an interest in protecting the sanctity of marriage. Absent one of the other four explicitly limited grounds for divorce, spouses may divorce only if the couple lives separately without cohabitation for one year. S.C. Const. art. XVII, § 3; S.C.Code Ann. § 20–3–10(1)–(5) (1976). With that recognition in mind, the adoption of the fault approach could cause ironic results. Two of the main purposes of an engagement are to prepare the couple for marriage and test the permanency of their compatibility. In some circumstances, the fault approach may penalize a party who innocently recognizes the couple's incompatibility. *See Fierro*, 465 N.W.2d at 672 ("This court adopts the no fault approach followed in a minority of jurisdictions. Since the major purpose of the engagement period is to allow a couple time to test the permanency of their feelings, it would seem highly ironic to penalize the donor for taking steps to prevent a possibly unhappy marriage." (citations and internal quotation marks omitted)). On the other hand, adoption of the no-

fault approach would not diminish our state's intent to protect the marital relationship.

Lastly, our law addressing heart balm actions does not suggest that we should adopt the fault approach. In fact, our law may provide contradicting suggestions. While breach of promise to marry actions have not been explicitly abolished, the claims for alienation of affections and criminal conversation have. *Compare Bradley,* 283 S.C. at 368, 322 S.E.2d at 667 ("The appellant urges this court to abolish the cause of action for breach of marriage promise. We decline to do so."), *with Russo,* 310 S.C. at 204–05, 205 n. 5, 422 S.E.2d at 753, 753 n. 5 (abolishing the heart balm action for alienation of affections and recognizing our legislature abolished the heart balm action for criminal conversation); *Heape,* 335 S.C. at 424, 517 S.E.2d at 3 (noting *Russo's* holding as to alienation of affection and the legislature's action as to criminal conversation).

Although fault cannot determine ownership of the ring, we affirm the denial of Campbell's motions for directed verdict and JNOV on his actions for declaratory judgment and claim and delivery. Here, Campbell gave Robinson the ring during his proposal. Thus, he presented evidence that the ring was given in contemplation of marriage and therefore was an engagement ring conditioned upon the marriage occurring. Although Robinson kept the ring in a safe deposit box after the engagement was cancelled, without further evidence the ring would remain a conditional gift and Campbell would be entitled to recover it as a matter of law.

Robinson explicitly characterizes the ring as an engagement ring. However, she has presented evidence that the ring was converted into an absolute gift by testifying Campbell told her to keep the ring after the engagement was cancelled. Because Campbell disputes this contention, the evidence conflicts as to whether the ring was conditioned upon marriage. *See Worrell v. Lathan,* 324 S.C. 368, 371, 478 S.E.2d 287, 288 (Ct.App.1996) (noting that a gift is complete when there is "a donative intent to transfer title to the property, a delivery by the donor, and an acceptance by the donee" (internal quotation marks omitted)); *see also Smith v. Johnson,* 223 S.C. 64, 67–68, 74 S.E.2d 419, 421 (1953) (holding that "delivery" need not be "manual" but, "so far as the donor can make it so," must

only be "some act which indicates a relinquishment of possession and dominion on the part of the donor in behalf of the donee" (citations and internal quotation marks omitted)); *Hawkins,* 141 S.E. at 917 (recognizing that a conditional gift of an engagement ring can become an absolute gift after the engagement is cancelled). Accordingly, ownership of the ring was a jury issue, and a directed verdict on Campbell's claims for declaratory judgment and claim and delivery were not warranted.

We also affirm the trial court's denial of Campbell's motions for directed verdict and JNOV on his restitution claim. Restitution is an equitable remedy sought to prevent unjust enrichment. *Verenes v. Alvanos,* 387 S.C. 11, 17, 690 S.E.2d 771, 773 (2010); *Stanley Smith & Sons v. Limestone Coll.,* 283 S.C. 430, 434 n. 1, 322 S.E.2d 474, 478 n. 1 (Ct.App. 1984). Thus, "the plaintiff must show: (1) that he conferred a nongratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff its value." *Niggel Assocs. v. Polo's of N. Myrtle Beach, Inc.,* 296 S.C. 530, 532, 374 S.E.2d 507, 509 (Ct.App.1988). To be conferred nongratuitously, the plaintiff must confer the benefit either "(1) at the defendant's request or (2) in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment." *Id.* at 532–33, 374 S.E.2d at 509.

Here, the record does not contain evidence Campbell presented the ring to Robinson at her request. Nor does the record contain evidence Campbell permitted Robinson to keep the ring at her request or that he reasonably relied upon her to pay for the ring. Thus, Campbell was not entitled to a directed verdict or JNOV on his restitution claim.

### III. Verdict Form and Jury Charge

Campbell claims the trial court erred in denying his motion for a new trial absolute because the verdict form and

jury charge were erroneous. In light of our rulings above, we agree.[5]

"An appellate court will not reverse the trial court's decision regarding jury instructions unless the trial court committed an abuse of discretion. An abuse of discretion occurs when the trial court's ruling is based on an error of law or is not supported by the evidence." *Berberich*, 392 S.C. at 285, 709 S.E.2d at 611 (citation and internal quotation marks omitted). "An erroneous jury instruction will not result in reversal unless it causes prejudice to the appealing party." *Id.*

Here, the trial court provided an erroneous jury charge and verdict form. The evidence presented a jury issue of whether the ring was a conditional or absolute gift. While the charge instructed the jury that the gift was conditional, it did not explain that the gift could become absolute. Moreover, the jury charge and verdict form hinged ownership of the ring upon fault in the breakup.

The focus on fault in the jury charge and verdict form undoubtedly affected the verdict. Fault was the only question posed to the jury to determine ownership of the ring, and the jury's finding on the question was adverse to Campbell. Thus, his actions for declaratory judgment and claim and delivery were prejudiced by the jury charge and verdict form. He is entitled to a new trial on those claims. In contrast, no evidence shows the ring was conferred to Robinson "nongratuitously." Therefore, Campbell was not prejudiced by the verdict form or jury charge on his restitution action, and he is not entitled to a new trial on that claim.

## ROBINSON'S APPEAL

Robinson argues the trial court erred in declining to grant her JNOV to award her damages, a new trial *nisi additur*, and a new trial as to damages because the jury's verdict was inconsistent.[6] We affirm.

---

5. We acknowledge the trial court lacked appellate court guidance on this issue at the time of trial.

6. We note that Robinson's argument seeking a new trial *nisi additur* is unpreserved. *See Cullen v. McNeal*, 390 S.C. 470, 492, 702 S.E.2d 378,

 Even if the verdict was inconsistent, Robinson's motions were not appropriate remedies to correct that error. When a jury renders an inconsistent verdict, the only remedies available at that moment are to resubmit the case to the jury or grant a new trial absolute. *See Stevens v. Allen,* 342 S.C. 47, 52–53, 536 S.E.2d 663, 665–66 (2000); *Camden v. Hilton,* 360 S.C. 164, 173–74, 600 S.E.2d 88, 92–93 (Ct.App. 2004). The remedies to correct an inconsistent verdict are limited because a court cannot determine whether the jury intended to render a verdict for the plaintiff or defendant. *Stevens v. Allen,* 336 S.C. 439, 450–51, 520 S.E.2d 625, 630–31 (Ct.App.1999).

## CONCLUSION

For the aforementioned reasons, we affirm the issues as they relate to Campbell's action for restitution and Robinson's action for breach of promise to marry. We reverse and remand for a new trial on Campbell's actions for declaratory judgment and claim and delivery.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

FEW, C.J., and KONDUROS, J., concur.

390 (Ct.App.2010) ("[F]or an issue to be preserved for appellate review it must have been raised to and ruled upon by the trial court."). Moreover, Robinson's appellate brief describes her motion for a new trial as to damages as a "new trial absolute as to damages." However, her post-trial motions sought merely "a new trial on the *sole* issue of damages...." A new trial absolute and a new trial as to damages are different remedies. Thus, even if her appellate argument sought a new trial absolute, that issue is unpreserved. *See id.* ("[F]or an issue to be preserved for appellate review it must have been raised to and ruled upon by the trial court.").