742 S.E.2d 687

Mario S. INGLESE and Mario S. Inglese, PC, Appellants,

v.

Carl H. BEAL Jr., Linda Erickson, and Russell S. Stemke, Defendants,

Of Whom Carl H. Beal Jr. is the Respondent.

Appellate Case No. 2012–208307.

No. 5123.

Court of Appeals of South Carolina.

Heard Jan. 9, 2013.

Decided May 1, 2013.

292

Charles M. Feeley, of Charleston, for Appellants.

Eugene P. Corrigan III, Corrigan & Chandler, LLC, of Charleston, for Respondent.

FEW, C.J.

Mario Inglese, a lawyer, was retained to close a real estate transaction. Inglese failed to obtain a written release of a judgment lien of which he had actual knowledge, and as a result, a title insurance company was forced to pay the judgment creditor $10,000. The title insurance company sought reimbursement from Inglese, which he paid. Inglese then sued the seller—his client—for unjust enrichment and equitable indemnity. The circuit court granted summary judgment to the seller. We affirm.

## I. Facts and Procedural History

In September 2006, Carl H. Beal Jr. entered into a contract to sell real property. The contract provided that Beal would deliver "marketable title ... free of encumbrances." Because Beal is not an attorney, he hired Inglese to close the transaction. Inglese commissioned a title search and discovered a judgment lien against the property in excess of six million dollars.[1] Inglese claims he contacted the judgment creditor's attorney, Russell S. Stemke, and reached an oral agreement with him regarding how the judgment lien would be resolved. According to Inglese, Stemke agreed to allow the net proceeds from the sale to be held in escrow on the condition the property would be released from the judgment lien, pending the outcome of the appeal in the defamation case. However, no such agreement was ever reduced to writing.

At the closing in November 2006, Inglese represented both Beal and the buyer. Beal executed an owner's affidavit, which certified to the title insurance company that there were "no pending suits, proceedings, judgments, ... [or] liens" against him. However, this provision was crossed out and initialed by Inglese, not by Beal. Beal executed an affidavit of ownership,

---

1. The judgment was entered against Pat Beal, presumably Beal's wife, in a defamation case brought by Linda Erickson. *See generally Erickson v. Jones St. Publishers, L.L.C.,* 368 S.C. 444, 629 S.E.2d 653 (2006).

which required Beal to swear that "no judgment, decree or lien exist[ed] against [him], or against [his property], and no actions exist[ed] which may lead to such a judgment, decree or lien." This provision was also crossed out and initialed by Inglese, but not by Beal. Beal claims Inglese took these actions without Beal's knowledge.

In accordance with the alleged agreement, Inglese withheld the net proceeds of $28,940 at closing and listed that amount on the settlement statement at line 507 as "Escrow to Russell S. Stemke/Linda Erickson." After the closing, however, Stemke denied he had an agreement with Inglese and refused to release the property from the judgment lien.

The buyer made a claim on the title insurance policy, and the insurance company paid the judgment creditor $10,000 to release the lien. The title insurance company then revoked Inglese's status as an approved title insurance agent and filed a lawsuit against him. Inglese paid the title insurance company $10,000 to settle the lawsuit.

In December 2010, Inglese filed this lawsuit against Beal on the theories of unjust enrichment and equitable indemnity. As we mentioned, Beal was Inglese's client. Beal filed a motion for summary judgment. In addition to claiming there was no issue of material fact as to either of Inglese's causes of action, Beal asserted the voluntary payment doctrine and the doctrine of unclean hands as defenses. At the summary judgment hearing, Beal's attorney argued "basically our attorney is suing us for what [the attorney] did," "my client is not an attorney," and "now there's an argument . . . that because Mr. Beal somehow benefitted from this mistake made by his attorney," Beal must compensate his own attorney. The circuit court summarily granted the motion in open court, stating, "you blame Mr. Beal and Mr. Beal is not a lawyer. He can't certify title. . . . The buck stops with the closing attorney."

## II. The Summary Judgment Ruling

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

## A. The Role of an Attorney

■ We begin our discussion with an examination of the role of an attorney in a real estate transaction. In South Carolina, all real estate closings must be supervised by an attorney. *Matrix Fin. Servs. Corp. v. Frazer,* 394 S.C. 134, 138, 714 S.E.2d 532, 534 (2011). This requirement is based on the policy determination that the use of an attorney to close a real estate sale is necessary to protect the participants in the transaction and the public from the numerous things that can go wrong when transferring real estate. *See State v. Buyers Serv. Co.,* 292 S.C. 426, 431, 357 S.E.2d 15, 18 (1987) (per curiam) (requiring real estate closings to be conducted by attorneys "for the protection of the public from the potentially severe economic and emotional consequences which may flow from erroneous advice given by persons untrained in the law"). As the supreme court stated in *Buyers Service,*

> We are convinced that real estate and mortgage loan clos-ings should be conducted only under the supervision of attorneys, who have the ability to furnish their clients legal advice should the need arise and fall under the regulatory rules of this court. Again, protection of the public is of paramount concern.

292 S.C. at 434, 357 S.E.2d at 19; *see also Matrix,* 394 S.C. at 140, 714 S.E.2d at 535 (stating "the presence of attorneys in real estate loan closings is for the protection of the public and that 'protection of the public is of paramount concern' in loan closings" (quoting *Buyers Serv. Co.,* 292 S.C. at 434, 357 S.E.2d at 19)).

■ The attorney's role pursuant to this policy, therefore, is to protect the participants in real estate transactions from the numerous potential problems that may arise. When an attorney is aware of such a potential problem, it is the responsibility of the attorney to ensure that the potential never materializes. One such problem is the existence of a judgment against the seller. A lien arises from the judgment, and if the lien is not released, the judgment creditor may foreclose against the buyer after the sale takes place. *See Ducker v. Standard Supply Co.,* 280 S.C. 157, 158, 311 S.E.2d 728, 729 (1984) ("Under South Carolina law, a judgment represents a judicial declaration that a judgment debtor is

personally indebted to a judgment creditor for a sum of money. A judgment may also establish a lien upon the real property of the debtor."); *see also* S.C.Code Ann. § 30–7–10 (2007) (a properly recorded judgment lien on real property is valid against a purchaser of the property). In the specific context of a judgment lien against the property, the attorney-client relationship imposes on the attorney the fiduciary responsibility of protecting the client by getting the judgment lien released.

## B. Unjust Enrichment Claim

 Inglese first argues the circuit court erred in granting summary judgment on his unjust enrichment claim. We find Inglese failed as a matter of law to establish the elements required to recover for unjust enrichment. Therefore, the circuit court was correct to grant summary judgment on this cause of action.

 "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." *Dema v. Tenet Physician Servs.–Hilton Head, Inc.*, 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009). The remedy for unjust enrichment is restitution. *See Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 409, 581 S.E.2d 161, 167 (2003) ("Restitution is a remedy designed to prevent unjust enrichment."). To recover restitution in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value. *Campbell v. Robinson*, 398 S.C. 12, 24, 726 S.E.2d 221, 228 (Ct.App.2012); *Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*, 296 S.C. 530, 532, 374 S.E.2d 507, 509 (Ct.App.1988).

Inglese failed as a matter of law to establish any one of these elements. In fact, Inglese did not address the elements of unjust enrichment in the circuit court or in his briefs on appeal. Neither his initial brief to this court nor his reply brief refer to the elements of unjust enrichment even once. He simply argued there was no basis for summary judgment as to the defenses Beal asserted. Because we need not

address the defenses if Inglese has failed to establish the elements of the cause of action, we address the elements.

■ As to the first element, Inglese did not confer a benefit on Beal. Instead, the title insurance company conferred a benefit on Beal when it paid the judgment creditor to release the lien. After that payment, the harm Inglese caused to Beal was mitigated as much as possible because the release extinguished any further liability Beal had with respect to the sale. Therefore, Inglese's decision to settle the lawsuit against Inglese had no impact on Beal. Moreover, not just any benefit conferred meets the first element. Rather, the benefit must be non-gratuitous, either because it was conferred at Beal's request or because the circumstances were such that Inglese could reasonably rely on Beal for repayment. *Campbell*, 398 S.C. at 24, 726 S.E.2d at 228 (citing *Niggel Assocs.*, 296 S.C. at 532–33, 374 S.E.2d at 509). Inglese did not pay the insurance company at Beal's request. He made the payment entirely in his own self-interest to settle a lawsuit. Also, a lawyer may not rely on his client for repayment in the event the lawyer incurs liability for the lawyer's mistake in failing to protect the client. Because Inglese conferred no benefit on Beal, he failed to meet the first element as a matter of law.

As to the second and third elements, Inglese also failed as a matter of law. We have already discussed that Inglese conferred no benefit on Beal, and thus, Beal could not have realized any value from the non-existent benefit. Finally, there is absolutely nothing inequitable about Inglese's inability to recover restitution from Beal. Beal was merely trying to sell a parcel of real estate, and he should have been able to rely on his lawyer to protect him from the adverse effects of the judgment. Accordingly, all of the inequity in this case falls on Beal.

### C. Equitable Indemnity Claim

■ Inglese next argues the circuit court erred in granting summary judgment on his claim for equitable indemnity. We find this claim also fails as a matter of law, and thus the circuit court ruled correctly.

■ The right of equitable indemnity arises out of the relationship between the indemnity plaintiff and the indemnity

defendant. "Traditionally, the courts have allowed equitable indemnity in cases of imputed fault or where some special relationship exists between the first and second parties." *Town of Winnsboro v. Wiedeman–Singleton, Inc.*, 303 S.C. 52, 57, 398 S.E.2d 500, 503 (Ct.App.1990) *(Winnsboro I) aff'd*, 307 S.C. 128, 414 S.E.2d 118 (1992). Under the doctrine of equitable indemnity,

> a right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join.

*Stuck v. Pioneer Logging Machinery, Inc.*, 279 S.C. 22, 24, 301 S.E.2d 552, 553 (1983). Generally, an indemnity plaintiff may recover damages from a defendant "where the wrongful act of the defendant has involved the [indemnity] plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest." *Addy v. Bolton*, 257 S.C. 28, 33, 183 S.E.2d 708, 709 (1971) (citation and quotation marks omitted).

When a sufficient relationship between them exists, the indemnity plaintiff (Inglese) must prove the following elements to recover damages on an equitable indemnity claim: (1) the indemnity defendant (Beal) is at fault in causing the damages of the third party (the title insurance company); (2) the plaintiff has no fault for those damages; and (3) the plaintiff incurred expenses that were necessary to protect his interest in defending the third party's claim. *See Town of Winnsboro v. Wiedeman–Singleton, Inc.*, 307 S.C. 128, 132, 414 S.E.2d 118, 121 (1992) (defining a sufficient relationship for equitable indemnity); *Addy*, 257 S.C. at 33–34, 183 S.E.2d at 709–10 (describing the requirements for proving equitable indemnity); *Walterboro Cmty. Hosp. v. Meacher*, 392 S.C. 479, 485, 709 S.E.2d 71, 74 (Ct.App.2011) (stating the elements of equitable indemnity); *Winnsboro I*, 303 S.C. at 57–59, 398 S.E.2d at 503–04 (discussing what must be proven to recover for equitable indemnity).

As to the first element, the title insurance company's damages resulted from the fact that the judgment lien was valid and enforceable against the buyer after the sale. In this

regard, Beal did nothing wrongful. He was simply attempting to sell real estate and did the right thing by retaining an attorney to close the sale.

Instead, it was Inglese's wrongful act in failing to resolve the lien that caused the title insurance company's damages. Because Beal is not at fault in causing those damages, Inglese failed to establish the first element.

Inglese argues, however, that he meets the first element because Beal committed wrongful conduct that led to the judgment, and this misconduct "has involved [Inglese] in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest." *See Addy*, 257 S.C. at 33, 183 S.E.2d at 709. The argument misses the point of equitable indemnity. First, it was not Beal's conduct that led to the judgment. *See Erickson*, 368 S.C. at 455–57, 629 S.E.2d at 659–60 (describing the conduct of Pat Beal leading to the judgment against her). Second, Pat Beal's conduct and the resulting judgment merely created the situation giving rise to Inglese's responsibility to protect his client. In other words, regardless of any misconduct resulting in a judgment and a lien against the property, Inglese was aware of the judgment lien and had a fiduciary responsibility to protect Beal from any adverse effect it may have on the real estate sale. Inglese cannot avoid this responsibility to protect Beal by claiming the judgment was Beal's fault. Viewing the evidence in the light most favorable to Inglese, Beal is not at fault in causing the title insurance company's damages. Therefore, Inglese failed as a matter of law to establish the first element.

Inglese also failed as a matter of law to establish the second element—whether he has no fault for the title insurance company's damages. In many cases, the resolution of an underlying lawsuit resolves the second element of an equitable indemnity claim. For example, the jury's determination in the underlying lawsuit of the indemnity plaintiff's fault will carry over to the indemnity lawsuit. *See, e.g., Addy*, 257 S.C. at 32, 183 S.E.2d at 709 ("The jury returned a verdict . . . against the [indemnity defendant], thus exonerating the [indemnity plaintiff] of any liability."). The underlying lawsuit did not resolve the second element here because Inglese settled the

underlying lawsuit before any determination of his fault. This court recognized in *Meacher* that even though the indemnity plaintiff settled the underlying lawsuit, the "settlement alone does not preclude indemnification when there is ... evidence to support a finding of ... lack of fault by the indemnitee." 392 S.C. at 487–88, 709 S.E.2d at 75.

In this case, there is no possibility, and certainly no evidence, that Inglese has no fault in causing the title insurance company's damages. The title insurance company's claim would not have arisen had Inglese satisfied his fiduciary duty to Beal and resolved the lien in writing. In addition to this duty to his client, Inglese had a duty to the title insurance company. The company's lawsuit against Inglese was based on the allegation that Inglese breached that duty—by failing to resolve the lien in writing, by crossing out the representations that there were no pending judgments or liens against Beal, and by otherwise failing to disclose the judgment to the company. Inglese's decision to pay the title insurance company's claim under these circumstances requires a finding that he cannot be "exonerated from any liability for those damages," 392 S.C. at 485, 709 S.E.2d at 74, and thus that he was at fault in causing the company's damages. Therefore, Inglese failed as a matter of law to satisfy the second element of equitable indemnity.

Inglese argues, however, that if there actually was an oral agreement to resolve the lien, the factfinder could determine he was without fault and thus he met the second element. He argues summary judgment should not have been granted on this element because there is a material issue of fact as to whether there was an oral agreement. We agree there is evidence in the record that Inglese reached an oral agreement to resolve the lien. We find, however, that the existence of this evidence does not create an issue of *material* fact.

Our state's policy determination that a lawyer must supervise a real estate closing is based on the lawyer's ability and responsibility to successfully prevent the very consequences Inglese permitted to occur. One of the primary purposes of a real estate closing is to bring finality to the transaction. In *Brazell v. Windsor*, 384 S.C. 512, 682 S.E.2d 824 (2009), our supreme court discussed the importance of this finality, stat-

ing, "Numerous legal documents are executed in a real estate transaction and several entities involved in the transaction, including the buyer, seller, lender, mortgage company, and title insurance company, rely on the finality of the closing." 384 S.C. at 518, 682 S.E.2d at 827. A cloud on the title of the seller, such as the judgment lien in this case, and the risk that the cloud may pass to the buyer, is one of the reasons this finality is so important. The real estate closing is the last opportunity for the parties to bring finality to this issue and prevent the cloud on the title from passing to the buyer.

As we have discussed, the responsibility to bring this important finality to the issue falls on the lawyer retained to supervise the closing. If the closing is properly conducted, the lawyer enables finality and prevents future litigation. If the agreement Inglese claims he made with the judgment creditor did in fact exist, Inglese should have documented the agreement in writing and made the writing part of the closing. Had Inglese performed this task, he would have prevented all this from occurring. Inglese chose not to document the alleged agreement, however, and thus chose to rely on the hope that the judgment creditor would later agree to relinquish his interest in the judgment. This choice by Inglese is critical to our analysis of the second element—whether Inglese is without fault—because Inglese's choice created the consequence he was retained to prevent. Inglese's choice left Beal at risk of losing all the proceeds of the sale and left the buyer at risk of having to take legal action to remove the cloud from his title. These risks are representative of those the supreme court had in mind when it stated in *Matrix* and *Buyers Service* that "the presence of attorneys in real estate loan closings is for the protection of the public and that 'protection of the public is of paramount concern' in loan closings." *Matrix*, 394 S.C. at 140, 714 S.E.2d at 535 (quoting *Buyers Serv. Co.*, 292 S.C. at 434, 357 S.E.2d at 19).

We find that Inglese's failure to protect Beal and the buyer from these risks resolves the second element of Inglese's equitable indemnity claim as a matter of law. When a closing attorney representing the seller does not document in writing the resolution of a judgment lien on his client's property as to which the attorney has actual knowledge, but instead relies only on an oral agreement with the judgment

creditor, the attorney does so at his own risk.[2] When that risk materializes, as it did here, the possibility that the judgment creditor might later have acknowledged an oral agreement to resolve the lien, or that such an agreement might have been proven in subsequent litigation, is not a material fact. What is important is that the lawyer had a fiduciary duty to bring finality to the transaction, and failed. This failure cannot be excused, even if there was an oral agreement to resolve the lien. Thus, the lawyer is at fault in the transaction and cannot recover for equitable indemnity. As we stated in *Meacher*, "[t]he most important requirement for the finding of equitable indemnity is that the party seeking to be indemnified is adjudged without fault and the indemnifying party is the one at fault." 392 S.C. at 486, 709 S.E.2d at 74.

## D. Defenses

Inglese failed as a matter of law to establish any of the elements of either of his theories of recovery against Beal. It is unnecessary, therefore, that we address Beal's defenses. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when resolution of another issue disposes of the appeal).

## III. Conclusion

The circuit court's granting of summary judgment is **AFFIRMED.**

WILLIAMS, J., concurs.

PIEPER, J., concurring in part and dissenting in part.

I agree that summary judgment is proper as to Inglese's equitable indemnification claim. However, I respectfully dis-

---

2. This appeal does not present the question of whether Inglese's failure to obtain a written release of the judgment lien results in Inglese's liability to Beal as a matter of law. We address the consequences of Inglese's failure only in the context of his lawsuit against his own client for equitable indemnity.

sent as to the granting of summary judgment on Inglese's unjust enrichment claim and would reverse as to that claim.[3]

In determining whether the trial court erred in granting summary judgment, an appellate court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See Englert, Inc. v. LeafGuard USA, Inc.*, 377 S.C. 129, 134, 659 S.E.2d 496, 498 (2008). Here, as to the equitable indemnification claim, no disputed facts exist as to whether Inglese caused the loss to the title insurance company by permitting the property sale to close with the judgment lien still on the property.

Inglese claims he had an oral agreement with another lawyer to resolve the judgment lien. Courts are hesitant to resolve disputes between two lawyers. While not applicable to this case, lawyers have been required in other contexts to reduce their agreements to a written document. *See, e.g.*, Rule 43(k), SCRCP ("No agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or unless made in open court and noted upon the record, or reduced to writing and signed by the parties and their counsel."). One reason for such a policy is that it deters lawyers from being pulled into disputes otherwise between the clients of the lawyers.

All too often, Ronald Reagan's familiar quote comes to mind: "Trust, but verify." Inglese should have verified the resolution and discharge of the judgment lien prior to closing. While it is unfortunate that lawyers must often document agreements between themselves in writing, a lawyer should always remember the client's interest must always be protected. Even if the oral agreement proved to be valid, that agreement would have exposed the title insurance company to damages because the property was sold with the judgment lien still on the property. Consequently, the record fails to establish a question as to whether Inglese is without fault, and the equitable indemnification claim must also fail. *See Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 60, 518 S.E.2d 301, 305 (Ct.App.1999) ("Ordinarily, if one

---

3. I refer to Inglese's unjust enrichment cause of action herein, although I would label it as a cause of action for restitution.

person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action ... for indemnity against the person whose wrong has thus been imputed to him.... This is subject to the proviso that no personal negligence of his own has joined in causing the injury." (citation omitted)).[4] Therefore, I concur with the majority opinion that Beal is entitled to summary judgment on Inglese's equitable indemnification claim. *See id.* at 63, 518 S.E.2d at 307 ("The most important requirement for the finding of equitable indemnity is that the party seeking to be indemnified is adjudged without fault and the indemnifying party is the one at fault." (citation omitted)).

As to Inglese's unjust enrichment claim, I would find that Beal is not entitled to summary judgment on this claim because a question exists as to whether Beal received a benefit. While Inglese may be at fault in causing the title insurance company's damages, his fault does not necessarily preclude his claim for unjust enrichment. "Restitution is an equitable remedy sought to prevent unjust enrichment." *Campbell v. Robinson,* 398 S.C. 12, 24, 726 S.E.2d 221, 228 (Ct.App.2012) (citations omitted). A party seeking to recover on the theory of restitution must prove: "(1) that he conferred a non-gratuitous benefit on the defendant; (2) that the defendant realized some value from the benefit; and (3) that it would be inequitable for the defendant to retain the benefit without paying the plaintiff its value." *Niggel Assocs. v. Polo's of N. Myrtle Beach, Inc.,* 296 S.C. 530, 532, 374 S.E.2d 507, 509 (Ct.App.1988) (citation omitted). As to the first element, the title insurance company settled the claim to remove the cloud on the title created by the judgment lien. The title insurance company made the payment that released

---

4. Under South Carolina law, joint tortfeasors may not recover equitable indemnity. *See Vermeer,* 336 S.C. at 64, 518 S.E.2d at 307. Because Inglese is at fault, Inglese is unable to recover from Beal under this claim even if Beal is also at fault. Some jurisdictions recognize the doctrine of comparative indemnification when more than one party is at fault and share liability. *See GEM Developers v. Hallcraft Homes of San Diego, Inc.,* 213 Cal.App.3d 419, 261 Cal.Rptr. 626, 629 (1989) ("Under the equitable indemnity doctrine, defendants are entitled to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be equitable *sharing* of loss between multiple tortfeasors." (internal quotations omitted)). However, this issue was not raised on appeal.

the lien; however, Inglese was ultimately liable for the payment to clear the title to Beal's property. Inglese paid for the title to be cleared on Beal's property. Additionally, a genuine issue of material fact exists as to whether Beal had knowledge of, or consented to, the oral agreement. While Beal did not explicitly request Inglese to confer the benefit, an inference may be drawn that Inglese could reasonably rely on Beal for repayment. *See Campbell*, 398 S.C. at 24, 726 S.E.2d at 228 (finding a plaintiff confers a nongratuitous benefit when: (1) the benefit is at the defendant's request, or (2) the plaintiff reasonably relies on the defendant to pay for the benefit, and the defendant understands or ought to understand that the plaintiff expects compensation from him).

As to the second element, the record includes evidence that the judgment lien on Beal's property was absolved; this creates a genuine issue of material fact as to whether Beal received a benefit. As to the third element, a fact-finder could find it inequitable for Beal, who was aware of the lien against him, to be free of the original judgment lien while requiring Inglese to bear the cost of resolving the judgment lien. At this stage of the proceedings, we merely decide if there is a factual dispute warranting the claim to be determined at trial. Based on the foregoing, I would find Beal was not entitled to summary judgment on Inglese's unjust enrichment cause of action.[5] *See Englert*, 377 S.C. at 134, 659 S.E.2d at 498 ("Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." (citation omitted)).

The next inquiry is whether Beal's defenses of unclean hands and the voluntary payment doctrine raised in his motion for summary judgment preclude recovery as a matter of law at this stage of litigation. As to the doctrine of unclean hands, I would find a factual dispute exists as to whether Inglese is barred from recovery under this doctrine. While Inglese is at fault in causing the title insurance company's damages, a fact-finder could determine the alleged oral agreement between counsel existed. Moreover, there is a question of fact as to

---

5. According to Inglese, he placed the net proceeds from the closing in escrow pursuant to the alleged oral agreement. The record is not developed as to whether the funds were placed in a trust account and continue to remain in any such account.

any knowledge of, or consent to, the oral agreement by Beal. Accordingly, a fact-finder could find that based on the oral agreement, even though Inglese was at fault, he was not acting unfairly or with any misconduct *towards Beal. See Arnold v. City of Spartanburg*, 201 S.C. 523, 532, 23 S.E.2d 735, 738 (1943) ("The expression 'clean hands' means a clean record with respect to the transaction with the defendants themselves and not with respect to others." (citation omitted)). Furthermore, a fact-finder could find that Beal was not prejudiced and actually benefited from Inglese's conduct because the judgment lien on Beal's property was absolved and Inglese was liable for the cost. *See First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 568, 511 S.E.2d 372, 379 (Ct.App.1998) ("The doctrine of unclean hands precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant."). On the other hand, depending on the how the evidence is viewed, including any knowledge of or consent to the oral agreement by Beal, a fact-finder could determine that Inglese's conduct bars relief under the doctrine of unclean hands. Based upon these conflicting conclusions, I would find that Beal is not entitled to summary judgment as a matter of law based upon the doctrine of unclean hands. *See Wogan v. Kunze*, 379 S.C. 581, 585, 666 S.E.2d 901, 903 (2008) (noting even if the "evidentiary facts are not disputed but the conclusions or inferences to be drawn from them are, summary judgment should be denied" (citation omitted)).[6]

Finally, as an alternative, I would reverse and remand for specific findings of fact and conclusions of law as to the matters raised. The trial court's order is a Form 4 order that simply states: "Defendant Carl H. Beal's motion for summary judgment is granted." Inglese's complaint sets forth claims for promissory estoppel, unjust enrichment, and equitable indemnification.[7] In his motion for summary judgment, Beal

---

6. As to the voluntary payment defense, I would find that doctrine is inapplicable to the facts of this case. *See Moody v. Stem*, 214 S.C. 45, 53, 51 S.E.2d 163, 165 (1948) (finding the doctrine of voluntary payment provides that "where one man *voluntarily* pays money to another, it cannot be *against conscience and right*, that the receiver should retain it" (internal quotations omitted)).

7. On appeal, Inglese does not challenge the trial court's grant of summary judgment on his promissory estoppel claim. Therefore, the

argues the voluntary payment doctrine and the doctrine of unclean hands bar Inglese's claims. Beal also contends that Inglese's claim for equitable indemnification fails as a matter of law because Inglese's own conduct caused his damages. The trial court entered a summary order granting judgment without any findings as to these issues, and Inglese requested the court make such findings in his Rule 59(e), SCRCP motion. Thus, it is unclear whether the trial court specifically ruled Inglese's causes of actions were deficient or whether Beal's defenses raised in Beal's motion for summary judgment precluded recovery. Because the trial court declined to make findings upon request, I would alternatively reverse and remand for such findings. *See Bowen v. Lee Process Sys. Co.,* 342 S.C. 232, 241, 536 S.E.2d 86, 91 (Ct.App.2000) (vacating the order granting summary judgment and remanding the case to the trial court for "a written order identifying the facts and accompanying legal analysis upon which it relied").

---

failure to appeal this finding renders the issue abandoned. *See Biales v. Young,* 315 S.C. 166, 168, 432 S.E.2d 482, 484 (1993) ("Failure to argue is an abandonment of the issue and precludes consideration on appeal." (citation omitted)).