**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

William T. Hurley, Jr., as Trustee of the Aiken Property Trust, Respondent,

v.

Linda Donovan, Appellant.

Appellate Case No. 2024-001367

———

Appeal From Aiken County
M. Anderson Griffith, Master-in-Equity

———

Unpublished Opinion No. 2026-UP-143
Heard February 10, 2026 – Filed March 25, 2026

———

**AFFIRMED IN PART, REVERSED IN PART**

———

Jeffrey Francis Peil, of Huggins Peil LLC, of Evans, Georgia, and Bradley A. Brodie, of Smith, Massey, Brodie & Guynn, LLC, of Aiken, South Carolina, both for Appellant.

Richard C. Detwiler and Harry Alwyn Dixon, both of Callison Tighe & Robinson, LLC, of Columbia, both for Respondent.

———

**PER CURIAM:**  Appellant Linda Donovan appeals the master-in-equity's order requiring Linda to vacate property located in Aiken County, South Carolina (the Aiken Property or Property), arguing the master erred by finding that she was trespassing on the Aiken Property and that she was not entitled to $217,264.51 for financial contributions she made to the Aiken Property.  We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

This case concerns a dispute between Respondent William T. Hurley, Jr. (Trustee), in his capacity as trustee of the Aiken Property Trust (Aiken Trust), and Linda over possession of the Aiken Property.  The Aiken Trust's sole beneficiary is Trust One and, prior to November 10, 2021, Trust One's sole beneficiary was John J. Donovan, Sr. (Donovan Sr.), Linda's husband.

The formation of the Aiken Trust and Trust One stems from long-standing litigation in Massachusetts between Donovan Sr. and his children.  Most of the agreements reached during the litigation resulted from arbitration proceedings.  In 2004, the Massachusetts Superior Court, with the consent of Donovan Sr. and his children, appointed the Honorable John S. Martin (Arbitrator), retired district court judge for the United States District Court, Southern District of New York, as the permanent arbitrator over the arbitration proceedings.

On March 26, 2007, Donovan Sr. and his children executed a Final Settlement Agreement (FSA) that required the creation of a series of trusts, including Trust One, and the transfer of real estate properties at issue in the litigation into the trusts.  On January 12, 2010, John J. Donovan Jr. (Donovan Jr.) executed a trust agreement establishing Trust One in accordance with the FSA.  Under the trust agreement, the trustee can "exercise all powers . . . [the trustee] may deem necessary or proper to reasonably maintain the assets of [Trust One]."  The FSA and trust agreement for Trust One prohibited Donovan Sr. from transferring or assigning his beneficiary interest in Trust One.

On the same date Donovan Sr. and his children executed the FSA, Linda signed a settlement agreement that was "contingent upon the signing and execution of the [FSA]."  Under this settlement agreement, Linda stipulated "that she [had] no interest or claims" in the properties transferred into Trust One under the FSA.

In December 2014, Donovan Sr. and his children executed an amendment to the trust agreement for Trust One. Under the amendment, Donovan Jr. and Trustee were authorized to sell certain property held in Trust One and purchase other properties, including the Aiken Property, in their replacement. Additionally, the amendment included a provision stating that the replacement properties "shall be owned solely by [Trust One]."

On January 14, 2015, Trustee executed a declaration of trust that (1) established the Aiken Trust to facilitate the purchase of the Aiken Property, (2) named Trustee as the sole trustee over the Aiken Trust, and (3) named Trust One as the Aiken Trust's sole beneficiary. To fund the purchase of the Aiken Property, Donovan Sr. contributed $8,000, Linda contributed $19,974.24, and Trust One contributed $1,282,953.49. Linda has since lived on the Aiken Property.

In April 2015, Donovan Sr. executed a "Life Estate, Will, and Option to Purchase Real Estate" and recorded the document with the Aiken County Register of Deeds. Under the document, Donovan Sr. granted Linda an option to purchase the Aiken Property below fair market value, an exclusive life estate in the Aiken Property, and "clear title" to the Aiken Property upon his death.

After discovering that Donovan Sr. recorded the "Life Estate, Will, and Option to Purchase Real Estate," Donovan Sr.'s children petitioned Arbitrator to sanction Donovan Sr. On May 1, 2019, Donovan Sr. executed a stipulation making the following admissions: (1) the "Life Estate, Will, and Option to Purchase Real Estate" was "invalid, of no force and effect, and [] void ab initio"; (2) as Trust One's sole beneficiary, he did not "have the right or authority to transfer, assign[,] or pledge any assets held by or for the benefit of Trust One"; and (3) he would not make any future attempts to transfer, convey, or assign his beneficiary interest in Trust One. In his October 1, 2019 order and award on the children's petition, Arbitrator found that Donovan Sr. violated the FSA and the trust agreement for Trust One and ordered, among other things, that Donovan Sr. and Linda file documents to correct the invalid recording of the "Life Estate, Will, and Option to Purchase Real Estate." The Massachusetts Superior Court confirmed Arbitrator's order and award.

In compliance with Arbitrator's order and award, Donovan Sr. and Linda executed a quitclaim deed conveying any legal title they had in the Aiken Property to Trustee, as the trustee of the Aiken Trust.

On November 10, 2021, Arbitrator issued an award extinguishing Donovan Sr.'s beneficiary interest in Trust One, expressing concerns about Donovan Sr.'s repeated conduct that violated various orders, agreements, trust documents, and other related documents executed throughout the litigation between Donovan Sr. and his children. The Massachusetts Superior Court confirmed Arbitrator's award, and the Massachusetts Appeals Court affirmed the award's confirmation.

Shortly after Arbitrator terminated Donovan Sr.'s interest in Trust One, Trustee filed this action against Linda, asserting (1) a declaratory judgment action, seeking an order stating that Linda has no right or interest to possess, use, or occupy the Aiken Property; (2) a trespass action; and (3) an action for ejectment of a trespasser. Linda asserted several counterclaims, including claims for constructive or resulting trust and unjust enrichment. The parties later referred the action to the master-in-equity and proceeded to a bench trial on June 26, 2024.

Morris Rudnick, the closing attorney for Aiken Trust's purchase of the Aiken Property, testified to his belief that "the Aiken Property would be [Linda's] primary residence."

Trustee testified to the following: (1) Linda was never a beneficiary of the Aiken Trust nor Trust One; (2) after Arbitrator removed Donovan Sr.'s interest in Trust One, Linda remained on the Aiken Property without paying any rent to the Aiken Trust; and (3) Trustee needed to sell the Aiken Property "due to a judgment recorded in Massachusetts based on [Donovan Sr.'s] fraudulent actions involving Trust One." Trustee also testified that he was aware Linda had maintained the Aiken Property.

Linda testified to the following: (1) she resided in the Aiken Property since its purchase, and maintained and improved the property; (2) she wanted to remain on the Aiken Property; and (3) if she could not remain on the Aiken Property, she wanted to be reimbursed the $19,974.24 she contributed to the purchase of the Aiken Property as well as $217,264.51 for costs she incurred while living on the Aiken Property. Linda provided an itemized list of the cost for each of the alleged improvements she made to the Aiken Property and checks and receipts for each transaction. According to the itemized list, Linda spent $35,168.51 in property tax payments, $20,351 in property insurance payments, and $161,745 in payments to

contractors to conduct work on the Aiken Property (such as fencing, plumbing, roof repair, and HVAC installation).

Additionally, Linda testified that "she [had] paid no rent but [] [felt] she has improved the [Aiken] [P]roperty" and that "Trustee never discussed her paying any rent or provided any rental agreement."  Although "she admit[ted] [Donovan Sr.'s] interest in [Trust One] [was] extinguished" and "she [had] no ownership interest in the Aiken Property," Linda noted that it was Donovan Sr.'s intent for her to remain in the Aiken Property.  Further, Linda claimed that she had "been under duress at the time she signed any agreements [and] the quitclaim deed" concerning Trust One.

Following the trial, on July 22, 2024, the master issued his final order, granting partial judgment in favor of Trustee and partial judgment in favor of Linda. As to Linda's claims of duress, the master found that "[w]hile [Linda] used the word duress, the testimony does not support finding improper external pressure or influence."

The master ordered Trustee to reimburse Linda $19,974.24 for the purchase price she contributed to the Aiken Property and ordered Linda to vacate the Aiken Property.  The master further found that Trustee was not unjustly enriched because the maintenance performed was the result of "normal usage of this type of property." This appeal followed.

## ISSUES ON APPEAL

I.     Did the master-in-equity err by finding Linda was a trespasser on the Aiken Property?

II.    Did the master-in-equity err by finding that Linda was not entitled to $217,264.51 in unjust enrichment for financial contributions she made to the Aiken Property?

## STANDARD OF REVIEW

"In equity actions[,] an appellate court can review the record and make findings based on its view of the preponderance of the evidence.  However, [the appellate court] is not required to disregard the findings of the [master] who saw and heard the witnesses and was in a better position to judge their credibility."  *J & W*

*Corp. of Greenwood v. Broad Creek Marina of Hilton Head, LLC*, 441 S.C. 642, 664, 896 S.E.2d 328, 340 (Ct. App. 2023) (first alteration in original) (quoting *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 290-91 (2000)).

## LAW AND ANALYSIS

### I. Trespasser Finding

Linda argues that the master erred by finding she was a trespasser because there was evidence to show Donovan Sr. intended Linda to have an interest or right in the Aiken Property, creating a resulting trust. We disagree.

"Equity devised the theory of resulting trust to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another." *Bowen v. Bowen*, 352 S.C. 494, 499, 575 S.E.2d 553, 556 (2003). Generally, "when real estate is conveyed to one person and the consideration is paid by another, it is presumed that the party who pays the purchase money intended a benefit . . . and a resulting trust is raised in [her] behalf." *Lollis v. Lollis*, 291 S.C. 525, 528, 354 S.E.2d 559, 561 (1987). The evidence necessary to establish a resulting trust must be "clear, definite, and convincing." *Green v. Green*, 237 S.C. 424, 430, 117 S.E.2d 583, 586 (1960) (quoting *Privette v. Garrison*, 235 S.C. 119, 127, 110 S.E.2d 17, 21 (1959)).

We hold the master did not err by finding Linda was a trespasser on the Aiken Property because there was sufficient evidence to show that Linda understood she lacked an interest in the Aiken Property, which defeats any presumption that Linda intended to receive a benefit for her contribution to the purchase of the Aiken Property. *See Bowen*, 352 S.C. at 499, 575 S.E.2d at 556 (holding that the presumption of a resulting trust or a gift did not apply because a husband and wife "had a clear understanding as to the ownership of conveyed property according to [their] antenuptial agreement"); *see also Graham v. Town of Latta*, 417 S.C. 164, 193, 789 S.E.2d 71, 86 (Ct. App. 2016) ("To constitute actionable trespass . . . there must be an affirmative act, invasion of land must be intentional, and harm caused must be the direct result of that invasion." (quoting *Hawkins v. City of Greenville*, 358 S.C. 280, 296, 594 S.E.2d 557, 565-66 (Ct. App. 2004))).

Even though Linda contributed money to the purchase of the Aiken Property, she was not a beneficiary of the Aiken Trust or Trust One. Around the time Donovan

Sr. and his children executed the FSA creating Trust One, Linda signed a settlement agreement "contingent upon the signing and execution of the [FSA]" that "represents that she has no interest or claims" in the properties held by Trust One, which would include the later-acquired Aiken Property.

And while Donovan Sr. tried to transfer his beneficiary interest in the Aiken Property to Linda, the FSA and the trust agreement for Trust One prohibited the transfer. In fact, Arbitrator found that Donovan Sr.'s attempt to transfer his interest was "invalid, of no force and effect, and [] void ab initio," and ordered Donovan Sr. and Linda to execute a quitclaim deed conveying any purported legal title to the Aiken Property to Trustee, as trustee of the Aiken Trust. *See Milton P. Demetre Fam. Ltd. P'ship v. Beckmann*, 413 S.C. 38, 55, 773 S.E.2d 596, 605 (Ct. App. 2014) ("A quitclaim deed is a lawful means of conveying title."); 26 C.J.S. *Deeds* § 466 (2025) (providing that there is a presumption that a grantor intends to convey his entire interest, and a deed will be taken to convey the entire property and interest of the grantor in the premises unless something appears to limit it to a lesser interest). This court gives the Arbitrator's awards—along with the Massachusetts Superior Court's orders and the Massachusetts appellate courts' orders—full faith and credit. U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each [s]tate to the . . . judicial [p]roceedings of every other state."); *see also Purdie v. Smalls*, 293 S.C. 216, 219, 359 S.E.2d 306, 308 (Ct. App. 1987) ("The thrust of the Full Faith and Credit Clause of the United States Constitution is that courts of one state must give such force and effect to a judgment of a sister state as the judgment would have in the sister state.").

Thus, despite Linda contributing funds to purchase the Aiken Property, there is evidence showing Linda, both before and after Arbitrator extinguished Donovan Sr.'s beneficiary interest, understood that she would not have an interest in the Aiken Property. Even with this understanding, Linda remained on the Aiken Property, even after Trustee brought an action for her to leave the Aiken Property. *See Graham*, 417 S.C. at 193, 789 S.E.2d at 86 ("To constitute actionable trespass . . . there must be an affirmative act, invasion of land must be intentional, and harm caused must be the direct result of that invasion." (quoting *Hawkins*, 358 S.C. at 296, 594 S.E.2d at 565-66)).

While Linda alleges that she was under duress when she signed the Massachusetts agreements and the quitclaim deed resulting from the arbitration awards, the master found that Linda's testimony at the trial "[did] not support finding

improper external pressure or influence."  Our review of the record similarly gives no indication that Linda's signature was offered under duress.  *See J & W Corp. of Greenwood*, 441 S.C. at 664, 896 S.E.2d at 340 ("[An appellate court] is not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." (quoting *Ingram*, 340 S.C. at 105, 531 S.E.2d at 290-91)).

For the reasons above, we hold that the master did not err by finding Linda was a trespasser.

## II. Unjust Enrichment Finding

Linda argues that the master erred by finding Trustee was not unjustly enriched by the $217,264.51 in financial contributions Linda made toward the Aiken Property.  We hold that while Linda is not entitled to the $161,745 she paid to contractors for maintenance and improvements, she is entitled to the $35,168.51 she paid for property taxes and the $20,351 she paid for property insurance.

"A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another."  *Inglese v. Beal*, 403 S.C. 290, 297, 742 S.E.2d 687, 690 (Ct. App. 2013) (quoting *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009)).  "The remedy for unjust enrichment is restitution."  *Inglese*, 403 S.C. at 297, 742 S.E.2d at 691.  "To recover restitution in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the plaintiff for its value."  *Id.*  For a benefit to be conferred non-gratuitously, the plaintiff must confer the benefit either "at the defendant's request" or "in circumstances where the plaintiff reasonably relies on the defendant to pay for the benefit and the defendant understands or ought to understand that the plaintiff expects compensation and looks to him for payment."  *Campbell v. Robinson*, 398 S.C. 12, 24, 726 S.E.2d 221, 228 (Ct. App. 2012) (quoting *Niggel Assocs., Inc. v. Polo's of N. Myrtle Beach, Inc.*, 296 S.C. 530, 532-33, 374 S.E.2d 507, 509 (Ct. App. 1988)).

As to the payments to contractors, Linda provided an itemized list of the cost of each contractor's work on the Aiken Property and provided checks and receipts for each transaction.  However, Linda did not present any evidence that Trustee

requested Linda incur such expenses or that Trustee had some understanding that Linda expected Trustee to reimburse those expenses.[1]  Thus, Linda's expenses, whether they were maintenance or non-maintenance expenses, were conferred gratuitously and otherwise done in the normal usage of the Aiken Property.  Further, for any non-maintenance expenses, even if the benefit Linda conferred was non-gratuitous, she did not provide evidence at the trial as to the value of the improvements made to the property but only provided costs.  *See Barnes v. Johnson*, 402 S.C. 458, 467, 742 S.E.2d 6, 10 (Ct. App. 2013) ("In a case involving improvements to realty, the measure of recovery in restitution is the difference in the fair market value of the property before and after the improvements." (quoting *Niggel Assocs., Inc.*, 296 S.C. at 533, 374 S.E.2d at 509)), *abrogated on other grounds by Cruz v. City of Columbia*, 443 S.C. 201, 904 S.E.2d 451 (2024); *see also Stringer Oil Co. v. Bobo*, 320 S.C. 369, 374, 465 S.E.2d 366, 369 (Ct. App. 1995) ("[A]lthough the plaintiff's costs of performance might represent some evidence of value, they do not represent a recoverable item of restitution themselves.").

As to the property taxes and property insurance payments, Linda included those payments in her itemized list of costs and provided checks and receipts for each payment.  Here, the Aiken Trust's sole beneficiary is Trust One, and the trust agreement for Trust One required that Trustee "exercise all powers . . . [Trustee] may deem necessary or proper to reasonably maintain the assets of [Trust One]."  Because payments of property taxes and property insurance fall under a trustee's duty to pay taxes on, and otherwise preserve, the trust assets, Linda could reasonably rely on Trustee to make such payments, and Trustee ought to have understood that Linda would expect compensation for such payments.  *See* S.C. Code Ann. § 62-7-809 (2022) ("A trustee shall take reasonable steps to take control of and protect the trust property."); § 12-37-610(A) (Supp. 2025) ("Each person is liable to pay taxes and assessments on the real property that . . . he owns . . . as trustee . . . or may have the care of as guardian, executor, trustee, or committee."); § 62-7-816(11)

---

[1] To support her argument that Trustee should have reimbursed her for her payments to the contractors, Linda cites to a provision in the trust agreement for Trust One that Trustee "may pay ordinary personal and customary living expenses of [Trust One] up to a total annual amount of $200,000."  However, the provision does not say who would be the recipient of the funds, and payment of such money was subject to approval "[under] the sole discretion of Arbitrator, or his successor."  Further, Linda did not provide any evidence at trial that Arbitrator approved any payments to Linda or Donovan Sr.

(2022) (noting "a trustee may . . . insure the property of the trust against damage or loss"); *Bogert's The Law of Trusts and Trustees* § 541 (2025) ("The trustee has the duty to collect and preserve the property made subject to the trust."). Further, because the payments of property taxes and property insurance are attributable to Trustee's duty to maintain and preserve the Aiken Property—rather than having a direct bearing on improving a trust property's value—Linda was not required to provide evidence as to whether such payments improved the Aiken Property's value.

## CONCLUSION

For the foregoing reasons, we affirm the master's finding that Linda was trespassing on the Aiken Property. We hold that, in addition to the master's award of $19,974.24 in reimbursement for purchasing the property, Linda was entitled to $35,168.51 in property tax payments and $20,351.00 in property insurance payments, for a total award of $75,493.75.

**AFFIRMED IN PART, REVERSED IN PART.**

**GEATHERS, HEWITT and CURTIS, JJ., concur.**